258 N.J. Super. 420 (1992)
609 A.2d 1310
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EFTATIOS KOUNELIS, DEFENDANT-APPELLANT.
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
MICHAEL KOUNELIS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1992.
Submitted April 6, 1992.
Decided July 27, 1992.
*422 Before Judges R.S. COHEN, ARNOLD M. STEIN and KESTIN.
James M. Weinberg argued the cause for appellant Eftatios Kounelis (Weinberg and Kaplow, P.A., attorneys; James M. Weinberg on the brief).
Patricia B. Quelch, Assistant Prosecutor, argued the cause for respondent as to Eftatios Kounelis (John Kaye, Monmouth County Prosecutor, attorney; Mark P. Stalford, Assistant Prosecutor, of counsel).
Wilfredo Caraballo, Public Defender, attorney for appellant Michael Kounelis (John I. Lisowski, Jr., Designated Counsel, of counsel and on the brief).
John Kaye, Monmouth County Prosecutor, attorney for respondent as to Michael Kounelis (Patricia B. Quelch, Assistant Prosecutor, of counsel and on the letter brief).
Argued (Eftatios Kounelis) April 6, 1992.
Submitted (Michael Kounelis) April 6, 1992.
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
We consolidate these appeals for disposition.
Michael Kounelis and Eftatios Kounelis, twins, were both found guilty of first degree armed robbery, N.J.S.A. 2C:15-1; second degree possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4a; and third degree criminal restraint, N.J.S.A. 2C:13-2a. The trial judge sentenced Michael to concurrent terms aggregating twenty years with a ten-year parole ineligibility period, and Eftatios to two concurrent terms aggregating fifteen years with a five-year parole ineligibility period.
We affirm Michael's conviction. We reverse Eftatios's conviction because the judge did not secure the assistance of a Greek interpreter for him at trial.
*423 To preserve narrative continuity, we list the contentions raised by both defendants at the end of this opinion. Except for the interpreter question, all of the contentions raised by both Michael and Eftatios are clearly without merit. R. 2:11-3(e)(2). We limit our discussion to the reasons for reversing Eftatios's conviction and those which require our disposition before retrial.
On February 10, 1989, at approximately 2:30 a.m., two men entered the front door of the closed Millbrook Diner in Matawan. One man was carrying a crowbar, the other a handgun. They tied the hands of the cleaning men, Cruz and Cisneros, and ordered them to bend down and make no movement. When the robbers forced open the rear door, a third man entered. The robbers searched several cabinets. Cruz and Cisneros were ordered into the basement, where they were told to remain for fifteen minutes. About fifteen minutes after the robbers left, the men went to a neighbor who called the police.
Karaminas, a co-owner of the diner, told Matawan police that the robbers had taken over $6,000 including collector's coins. Cruz, who spoke little English, was interviewed with the assistance of a detective from the Holmdel Police Department who was fluent in Spanish.
That evening, Detective Alston of the Matawan police showed a photograph lineup to Cruz and Cisneros. Cruz picked out photograph No. 5, a picture of Michael Kounelis. Cisneros could not identify anyone.
Michael and Eftatios were arrested on the morning of February 14 in a room at the Secaucus Motor Lodge. The police found $111.50 in coins, later identified as coins taken from the Millbrook Diner.
Later that day Cruz was shown a second photographic lineup. He identified photograph No. 6, a picture of Eftatios. Michael's photograph was included in the array. Cruz had difficulty distinguishing between the two men.
*424 Several months later two live lineups were held at the Monmouth County Courthouse. Cruz identified Eftatios from the first lineup and Michael from the second. The lineup and photo identifications were introduced into evidence at trial.
Eftatios Kounelis does not speak English. He arrived in this country from Greece one month before his arrest. His presentence report notes that "[h]e does not speak or read and write English." The attorney who appeared on his behalf at his arraignment (actually Michael's attorney) advised the court:
My client speaks Greek only. I've explained the status of the proceeding to him today that it's a matter of record and that it's done normally in a sense informally and that the procedure is already laid out.
No defense was offered at trial. Just before summations, the following took place out of the presence of the jury:
THE COURT: ...
Okay, the other thing that we have to clear up is the question of the Defendants not testifying. Let me start 
He speaks Greek? He speaks English, right?
Where is the interpreter?
Can you come up here, please, ma'am?
(The interpreter approaches.)
THE COURT: All right, swear her in. And I want her to stand with this Defendant, Eftatios.
MARY STAMOULIS, an interpreter, sworn.
THE COURT: Mrs. Stamoulis, can you stand over there next to him?
Before you start interpreting 
Mr. Eugene, did you go over this question with him?
MR. EUGENE: [Eftatios's attorney] Yes, I did.
THE COURT: Do you speak Greek?
MR. EUGENE: Yes.
THE COURT: So he has discussed it with you?
MR. EUGENE: Yes, sir.
THE COURT: And you've explained to him, so all I have to do is explain it on the record?
MR. EUGENE: That's correct.
THE COURT: Mr. Gevas, you've explained it to your client?
MR. GEVAS: That's correct.
THE COURT: Here's what we're going to do. You interpret to him.
Where a defendant chooses not to testify and exercise this constitutional right, when the judge is instructing the jury about the law, the judge can do one of two things. Either the judge does not mention the fact that you did not *425 testify to the jury or the judge can comment on the fact that you did not testify to the jury.
The decision as to whether the judge should say something or say nothing is your decision. It is not your lawyer's decision. You can confer with your lawyer. He can advise as to what he thinks is the right thing to do. But you are free to reject that advice or accept the advice. The decision is yours.
If I were to comment to the jury, this is exactly what I would say. `The defendant in this case elected not to be a witness. It is his constitutional right to remain silent. You, the jury are not to consider for any purpose or in any manner in arriving at your verdict that fact that the defendant did not testify nor should that fact enter into your deliberations or you discussions in any manner or at any time. The defendant is entitled to have you consider all of the evidence and he is entitled to be assumed innocent even if he does not testify as a witness.'
To Mr. Eftatios Kounelis, did you discuss this with your lawyer?
MR. E. KOUNELIS: Yes.
THE COURT: What did he say?
THE INTERPRETER: Yes.
THE COURT: What is your decision?
MR. E. KOUNELIS: Because I don't speak English well, I made the decision that I will not take the stand.

THE COURT: That's not the question.
Does he want me to instruct the jury in the language that I just used?
MR. E. KOUNELIS: Yes.
THE COURT: Is it his decision? Ask him, "Is this your decision?"
MR. E. KOUNELIS: Yes.
THE COURT: Does your lawyer agree or disagree?
MR. E. KOUNELIS: There is no problem. He agrees with that. [emphasis added.]
An interpreter was also present and translated during the sentencing proceedings.
This defendant, unable to understand English, did not have the assistance of a Greek interpreter at trial so that he could understand the nature of the proceedings. Just before the trial began, Gevas, Michael's attorney, advised the judge that a Spanish interpreter would translate when Cruz testified for the State. There followed this colloquy:
MR. GEVAS: ... I believe there is a Spanish and Greek interpreter in court this morning. Could I request that the Greek interpreter sit next to Eftatios so she can inform him what is going on?
THE COURT: Is she your Greek interpreter?
MR. GEVAS: She is the interpreter for the court.

*426 THE COURT: She can interpret any testimony. She is not here to sit next to the client and interpret for the client. She is interpreting for the Court. If a Greek person testifies, then she is to interpret that testimony into English so that I can understand it and the jury can understand it; ...
MR. GEVAS: Mr. Eugene [Eftatios's attorney] speaks Greek. Mr. Ward [Eugene's associate filling in until Eugene arrived] does not. I speak some Greek well. [emphasis added.]
This ruling was incorrect. Instead of proceeding immediately with the trial, the judge should have then directly asked Eftatios through the court interpreter whether he could afford his own interpreter to assist him in his defense. If Eftatios said yes, the judge should have delayed the start of trial for whatever brief time was necessary for him to get an interpreter. If Eftatios could not afford a Greek interpreter, the judge was required to appoint one to assist him in his defense. State v. Neave, 117 Wis.2d 359, 344 N.W.2d 181, 188-189 (1984).
The failure to afford defendant a Greek interpreter violated his rights under the confrontation and assistance of counsel provisions of our federal and state Constitutions, U.S. Const. amend. VI; N.J. Const. of 1947 art. 1, para. 10. The present state of the law was accurately stated by Judge Stern, then sitting in the Law Division, in State v. Linares, 192 N.J. Super. 391, 470 A.2d 39 (Law Div. 1983):
There can be no doubt that a defendant in a criminal case has the right to the assistance of an interpreter so that he can understand the nature of the ongoing proceedings. The constitutional right of a defendant to such assistance has already been established.... After Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) extended the Sixth Amendment right of confrontation of adverse witnesses to the states through the Fourteenth Amendment, the states construed that right to include an interpreter for the defendant so that he can meaningfully understand the proceedings and consult with counsel concerning examination and cross-examination. [Id., 192 N.J. Super. at 393-394, 470 A.2d 39].
Accord, Application of Murga, 631 P.2d 735 (Okla.Sup.Ct. 1981), cited with approval in Linares:
When a defendant cannot speak or understand English, however, several of these rights cannot be preserved without the assistance of an interpreter. Among these rights are the right to counsel, the right to confront adverse witnesses, the right to cross-examine those witnesses, and the right to be *427 present at one's own trial. Without an interpreter any prosecution of those defendants would be constitutionally infirm. [at 736].
Six witnesses testified for the State, five in English and one in Spanish. To Eftatios "most of the trial must have been a babble of voices." United States ex rel. Negron v. State of New York, 434 F.2d 386, 388 (2d Cir.1970). It is a self-evident proposition that a defendant who is unable to speak and understand English has a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense. Id. at 389. "Particularly inappropriate in this nation where many languages are spoken is a callousness to the crippling language handicap of a newcomer to its shores, whose life and freedom in the state by its criminal processes chooses to put in jeopardy." Id. at 390.
A defendant's inability to spontaneously understand testimony being given would undoubtedly limit his attorney's effectiveness, especially on cross-examination. It would be as though a defendant were forced to observe the proceedings from a soundproof booth or seated out of the hearing at the rear of the courtroom, being able to observe but not comprehend the criminal processes whereby the state had put his freedom in jeopardy. Such a trial comes close to being invective against an insensible object, possibly infringing upon the accused's "basic right to be present in the courtroom at every stage of his trial." State v. Natividad, 111 Ariz. 191, 194, 526 P.2d 730, 733 (1974).
There is nothing in the record to indicate that Eftatios's attorney, his brother's attorney, or anyone else translated any part of the trial. Even if Eftatios's lawyer had the ability to communicate in Greek, this would not have diminished his need for an interpreter. As the Arizona Supreme Court pointed out in State v. Rios, 112 Ariz. 143, 539 P.2d 900 (1975):
For defense counsel to cross-examine witnesses, listen to testimony and objections of the prosecuting attorney and hear rulings and remarks of the presiding judge and simultaneously render an accurate and complete translation to his [client] is an impossible task. [112 Ariz. at 144, 539 P.2d at 901].
Accord, United States ex rel. Negron v. State of New York, supra, 434 F.2d at 389-90.
There was no waiver by defendant of his right to an interpreter, only acquiescence by his lawyer. The constitutional right to a defense interpreter may not be waived by mere *428 acquiescence or nonverbal conduct on the part of the accused. People v. Carreon, 151 Cal. App.3d 559, 574, 198 Cal. Rptr. 843, 852 (5th Dist. 1984). "A defendant who passively observes in a state of complete incomprehension the complex wheels of justice grind on before him can hardly be said to have satisfied the classic definition of a waiver as the `voluntary and intentional relinquishment of a known right.'" State v. Natividad, supra, 111 Ariz. at 194, 526 P.2d at 733.
We do not decide that a non-English speaking defendant is entitled to a separate interpreter in every criminal trial. In this case, with an interpreter needed only for this one defendant, it might have been sufficient for the court-appointed interpreter to sit at his side and translate the testimony of others when she was not translating the testimony of witnesses. In the first instance, it must be the trial judge's decision to determine whether a defendant needs an additional interpreter, depending upon the circumstances of the particular case, including the number of non-English speaking defendants.
The trial judge did not abuse his discretion in refusing a pretrial Wade hearing. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Cruz' initial identifications of Michael and Eftatios in separate photographic arrays and later, in separate physical lineups, were not made under such circumstances as to be impermissibly suggestive. State v. Long, 119 N.J. 439, 493, 575 A.2d 435 (1990); State v. Madison, 109 N.J. 223, 232, 536 A.2d 254 (1988).
The improper remarks made by the prosecutor in his summation should not be repeated at Eftatios's retrial. The prosecutor had no right to suggest that defense counsel's function was to ask "confusing questions, make confusing statements and things of the like.... because that's what they're paid to do. That's their job." It was improper for him to suggest that defense counsel's task was to confound and confuse the jury. State v. Watson, 224 N.J. Super. 354, 362, 540 A.2d 875 (App.Div.), certif. denied, 111 N.J. 620, 546 A.2d *429 537; cert. denied, 488 U.S. 983, 109 S.Ct. 535, 102 L.Ed.2d 566 (1988). Nor should the prosecutor have urged the jury to "[b]e courageous and act in accordance with your sworn oath as jurors and return a verdict of guilty for each and every count." It was reprehensible for the prosecutor to suggest that the only way the jurors could perform their duties would be by returning a guilty verdict. State v. Pennington, 119 N.J. 547, 576, 575 A.2d 816 (1990). We are nevertheless satisfied that these statements did not substantially prejudice the fundamental right of both defendants to have the jury fairly evaluate the merits of their case. State v. Johnson, 216 N.J. Super. 588, 613, 524 A.2d 826 (App.Div. 1987); State v. Marks, 201 N.J. Super. 514, 534-535, 493 A.2d 596 (App.Div. 1985).
The judgment of conviction is affirmed as to Michael Kounelis.
The judgment of conviction is reversed as to Eftatios Kounelis and his case is remanded to the Law Division for a new trial and for further proceedings consistent with this opinion.
APPEAL CONTENTIONS OF MICHAEL KOUNELIS
POINT I THE TRIAL COURT ERRED IN REFUSING TO HOLD A WADE HEARING WHICH WOULD HAVE RESULTED IN THE EXCLUSION OF THE CRUZ IDENTIFICATION TESTIMONY.
POINT II THE VERDICT OF THE TRIAL COURT WAS UNSUPPORTED BY AND AGAINST THE WEIGHT OF THE EVIDENCE REQUIRING JUDGMENT OF ACQUITTAL (NOT RAISED BELOW).
POINT III COUNSEL'S FAILURE TO MOVE PURSUANT TO R. 3:20-1 FOR A NEW TRIAL OR PURSUANT TO R. 3:18-1 FOR JUDGMENT OF ACQUITTAL CANNOT PRECLUDE THIS COURT FROM A REVIEW OF THE SUFFICIENCY OF THE EVIDENCE AGAINST DEFENDANT (NOT RAISED BELOW).
POINT IV THE STATE MADE NUMEROUS COMMENTS BELOW BEFORE THE JURY, THE ADMISSION OF WHICH, WITHOUT CURATIVE INSTRUCTION, AMOUNTED TO PLAIN ERROR AND WHICH CUMULATIVELY PREJUDICED THE DEFENDANT (NOT RAISED BELOW).
POINT V THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING DEFENDANT TO THE MAXIMUM TERM OF IMPRISONMENT ON EACH COUNT (NOT RAISED BELOW).

*430 APPEAL CONTENTIONS OF EFTATIOS KOUNELIS
POINT I THE FAILURE OF DEFENDANT'S COUNSEL TO PROVIDE AN INTERPRETER FOR HIM DURING TRIAL, AND THE FAILURE OF THE COURT TO ASSURE THE PRESENCE OF AN INTERPRETER, DENIED THE DEFENDANT A FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION AND THE NEW JERSEY CONSTITUTION.
POINT II THE TRIAL JUDGE ERRED IN REFUSING DEFENDANT COUNSEL'S REQUEST FOR A WADE HEARING ON THE SUGGESTIVENESS OF THE IDENTIFICATION PROCEDURE WHICH WAS USED IN THIS CASE AND, THUS, A REMAND FOR A WADE HEARING IS REQUIRED.
POINT III THE MISCONDUCT OF THE PROSECUTOR DEPRIVED THE DEFENDANT OF HIS DUE PROCESS RIGHT TO A FAIR TRIAL IN VIOLATION OF THE UNITED STATES CONSTITUTION AND THE NEW JERSEY CONSTITUTION (1947), ART. 1 PAR. 10.
A. THE PROSECUTOR DELIBERATELY ELICITED INFLAMMATORY, INADMISSIBLE TESTIMONY AND THEN COMMENTED ON THAT TESTIMONY IN SUMMATION.
B. THE PROSECUTOR'S IMPROPER COMMENTS IN SUMMATION DEPRIVED THE DEFENDANT A FAIR TRIAL AND DUE PROCESS OF LAW.
I. THE PROSECUTOR IMPROPERLY DENIGRATED THE DEFENDANT AND HIS DEFENSE.
II. THE PROSECUTOR IMPROPERLY INVADED THE PROVINCE OF THE JURY BY EQUATING A GUILTY VERDICT WITH THE PROSECUTOR'S FINAL COMMENT.
III. THE PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF HIS WITNESSES IN SUMMATION.
C. THE PROSECUTOR ELICITED TESTIMONY FROM DETECTIVE ALSTON WHICH SUGGESTED THAT THE DEFENDANT HAD BEEN ARRESTED FOR ANOTHER CRIME.
D. THE CUMULATIVE EFFECT OF THE PROSECUTOR'S MISCONDUCT REQUIRES A NEW TRIAL.
POINT IV THE DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL.
A. COUNSEL'S CONDUCT WAS INEFFECTIVE BY FAILING TO PROVIDE THE DEFENDANT WITH A GREEK/ENGLISH INTERPRETER.
B. COUNSEL WAS INEFFECTIVE IN FAILING TO FILE AND ARGUE A MOTION TO SUPPRESS EVIDENCE.
C. COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO THE PROSECUTOR'S IMPROPER COMMENTS IN SUMMATION.
D. COUNSEL WAS INEFFECTIVE BY FAILING TO OBJECT TO DETECTIVE ALSTON'S TESTIMONY ABOUT DEFENDANT'S ARREST.

*431 E. COUNSEL WAS INEFFECTIVE BY FAILING TO ADEQUATELY INSTRUCT HIS CLIENT ABOUT HIS RIGHT TO TESTIFY ON HIS OWN BEHALF.
F. COUNSEL WAS INEFFECTIVE BY HIS FAILURE TO PREPARE HIS CLIENT FOR TRIAL AND HIS FAILURE TO CONFER WITH HIS CLIENT DURING TRIAL.
POINT V ADMISSION OF "OTHER CRIMES" EVIDENCE DENIED THE DEFENDANT A FAIR TRIAL.
POINT VI THE DEFENDANT'S SENTENCE OF FIFTEEN YEARS WITH FIVE YEARS OF PAROLE INELIGIBILITY IS EXCESSIVE AND MUST BE REDUCED.