**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1408-19

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

RAMONA P. MERCADO-
VASQUEZ, a/k/a RAMONA
P. MERCADO, and
RAMONA P. VASQUEZ,

     Defendant-Appellant.

_____

> Submitted February 10, 2021 – Decided March 18, 2021
>
> Before Judges Geiger and Mitterhoff.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 14-12-1883.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Kimmo Abbasi, Designated Counsel, on the brief).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant Ramona P. Mercado-Vasquez appeals from a September 25, 2019 order denying her petition for post-conviction relief (PCR) without an evidentiary hearing. On appeal, defendant argues her trial counsel was ineffective for (1) failing to request a Spanish interpreter throughout the court proceedings; (2) pressuring her to plead guilty; (3) misrepresenting her sentencing exposure; and (4) not providing her with full discovery. We affirm, substantially for the reasons set forth in Judge Gary Wilcox's twenty-three-page written opinion. We add only the following comments.

We discern the following facts from the record. Defendant befriended codefendant Jorge Valencia, the superintendent of her building, who informed her and other codefendants that a resident, F.D.,[1] had money and jewelry in his apartment. Valencia valued these items at $5 million. In September 2013, all defendants formulated a plan to steal the items from F.D.'s apartment and split the proceeds. Defendant agreed with the plan to go into F.D.'s apartment in the middle of the night while he was sleeping, threaten him with a gun,[2] and steal

---

[1] We refer to the victims by their initials to protect their privacy.

[2] A few days before the robbery, Valencia brought the gun he had stolen from F.D. to defendant's apartment.

A-1408-19

the items. She also agreed to the plan to summon M.C., the doorman of the building, to F.D.'s apartment and restrain him while the codefendants disposed of the building's surveillance footage. Defendant's role was to wait in her apartment to receive the stolen goods. Defendant never renounced the plan. In fact, a test run was conducted where defendant propped the side door of the building open using a magazine.

On November 26, 2013, defendant and her codefendants carried out the plan. Valencia brought the items back to defendant's apartment in a book bag and a green case. Valencia put the items in the electrical panel of defendant's jacuzzi tub. Defendant later moved the stolen goods from the tub and hid them among her child's clothes. Defendant also put some of the items in the laundry room and others inside a closet.

On December 12, 2014, a Bergen County grand jury returned a fifteen-count indictment against defendant. Defendant subsequently pled guilty to first-degree armed robbery, N.J.S.A. 2C:2-6 and N.J.S.A. 2C:15-1, and second-degree conspiracy to commit kidnapping, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:13-1(b). The judge sentenced defendant, pursuant to the plea agreement, to fourteen years' imprisonment for the armed robbery conviction, and a concurrent eight-

year term for conspiracy to commit kidnapping.[3]  Each sentence was subject to the No Early Release Act N.J.S.A. 2C:43-7.2 and Graves Act, N.J.S.A. 2C:43-6.

On September 4, 2018, defendant filed a pro se petition for PCR.  On March 27, 2019, defendant filed a supplemental certification.  Thereafter, defendant was appointed counsel, who filed a brief in support of her petition.  On September 25, 2019, Judge Wilcox issued an order and written decision denying defendant's petition.

On appeal, defendant raises the following argument for our consideration:

> THE PCR COURT ERRED IN DENYING DEFENDANT AN EVIDENTIARY HEARING DESPITE THE FACT SHE DEMONSTRATED A [PRIMA FACIE] CASE OF [] INEFFECTIVE ASSISTANCE [OF] COUNSEL AS DEFENSE COUNSEL'S CONDUCT WAS DEFICIENT FOR NUMEROUS REASONS.

We review a PCR court's denial of a petition without an evidentiary hearing de novo.  State v. Jackson, 454 N.J. Super. 284, 291 (App. Div. 2018) (citing State v. Harris, 181 N.J. 391, 421 (2004)); see also State v. Blake, 444

---

[3] Thereafter, defendant filed a direct appeal challenging only her sentence on our excessive sentence calendar.  R. 2:9-11.  On May 24, 2016, we affirmed defendant's sentence as it was "not manifestly excessive or unduly punitive and [did] not constitute an abuse of discretion."  We remanded for articulation of the aggravating and mitigating factors considered by the judge.

N.J. Super. 285, 294 (App. Div. 2016). To establish a prima facie claim of ineffective assistance of counsel, a defendant must satisfy the two-pronged test enumerated in Strickland v. Washington, 466 U.S. 668, 687 (1984), which our Supreme Court adopted in State v. Fritz, 105 N.J. 42, 58 (1987). To satisfy the first prong of the Strickland standard, a defendant must establish that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. The defendant must rebut the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance[. . . .]" Id. at 689. Thus, this court must consider whether counsel's "representation fell below an objective standard of reasonableness." Id. at 688.

To satisfy the second Strickland prong, a defendant "must show that the deficient performance prejudiced the defense." Id. at 687. In other words, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. To satisfy the second prong of the Strickland standard where a defendant seeks to set aside a conviction based on a guilty plea, he or she must show that "had he [or she] been properly advised, it would have been rational for him [or her] to decline the plea offer and insist on going to trial" under the

5

circumstances. State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (citing Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination must be "based on evidence, not speculation." Ibid. Our Supreme Court has made clear that the "error committed must be so serious as to undermine the court's confidence in the jury's verdict or result reached." State v. Chew, 179 N.J. 186, 204 (2004) (citing Strickland, 466 U.S. at 694).

"With respect to both prongs of the Strickland test, a defendant asserting ineffective assistance of counsel on PCR bears the burden of proving his or her right to relief by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012) (citing State v. Echols, 199 N.J. 344, 357 (2009); State v. Goodwin, 173 N.J. 583, 593 (2002)). A failure to satisfy either prong of the Strickland standard requires the denial of a PCR petition. Fritz, 105 N.J. at 52 (quoting Strickland, 466 U.S. at 687). A defendant must "do more than make bald assertions that he was denied the effective assistance of counsel" to establish a prima facie claim entitling her to an evidentiary hearing. State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999).

In support of her petition for PCR, defendant certifies that she does not speak English proficiently and could not understand the complex legal terms used during the proceedings. Defendant argues that her trial counsel's failure to

obtain an interpreter constituted ineffective assistance of counsel and, at a minimum, entitled her to an evidentiary hearing. We find this contention to be without merit as it is contradicted by the record.

It is well-settled that "a defendant who is unable to speak and understand English has a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense." State v. Kounelis, 258 N.J. Super. 420, 427 (App. Div. 1992) (citing United States ex rel. Negron v. New York, 434 F.2d 386, 389 (2d Cir. 1970)); see also State v. Linares, 192 N.J. Super. 391, 393 (Law Div. 1983) ("[A] defendant in a criminal case has the right to the assistance of an interpreter so that he [or she] can understand the nature of the ongoing proceedings."). "The constitutional right to a defense interpreter may not be waived by mere acquiescence or nonverbal conduct on the part of the accused." Kounelis, 258 N.J. Super. at 427-28.

At the plea hearing, the judge asked defendant whether she needed the aid of an interpreter, as well as whether she was able to read and write in English:

> [Court:] Ms. Mercado, do you [] need the benefit of a Spanish interpreter?
>
> [Defendant:] No.
>
> [Court:] Are you completely comfortable in English?
>
> [Defendant:] Yes.

7

[Court:] Do you read and write English?

[Defendant:] Yes.

Later, the judge again inquired: "[d]o you read and write in English?" Defendant replied, "[y]es." Beyond this, defendant testified at length at the sentencing hearing:

> [Defendant:] Yes. I know what happened was awful and terrible. And I want to apologize to [F.D.] I'm really sorry for what happened. I never wanted any of you or anybody to get hurt. Everyone I hurt, my son, my family. I wish I could change things up and – and go back and never let this to happen. I'm sorry. And I wish I could change things, Judge, and – and maybe let them know that (indiscernible) know what Valencia was planning to do. And mentally, emotionally at that moment I was going though a trauma, wasn't doing well. I feel like I was in a tough situation, because I don't – I don't want to talk on my baby father. We've been together for so many years. I don't want him – I don't want to hurt him. I don't want to him –
>
> [Defense Counsel:] Take a second. Catch your breath. Take a second. You're okay.
>
> [Defendant:] Your Honor, from my heart, I want you to take a consideration with me and my son, and take my apologies. I know what happened was terrible. I can never be part of it. I should say something. I let something like that happen. I'm really sorry. I would like to have a second chance to be with my son and my mother.

A-1408-19

The foregoing testimony belies defendant's contention that she did not have a firm grasp of the English language. Any argument that her trial counsel was ineffective in failing to request and utilize an interpreter has no merit.

Next, defendant claims that her trial counsel pressured her into pleading guilty. Defendant's plea colloquy, however, convinces us that her trial counsel did not pressure or coerce her in any manner:

> [Court:] Okay. Did anyone force you or pressure you in any way to do this?
>
> [Defendant:] No.
>
> [Court:] Have you had sufficient time to make this decision?
>
> [Defendant:] Yes.
>
> [Court:] Are you comfortable with the decision you've made?
>
> [Defendant:] Yes.
>
> [Court:] Have any promises been made that are not in writing here? Are there any side agreements that I'm not aware of?
> [Defendant:] No.
>
> [Court:] Have you had sufficient time to discuss your decision with your attorney?
>
> [Defendant:] Yes.

 A-1408-19

[Court:] Are you satisfied with all the advice you've received from your attorney?

Defendant: Yes.

Clearly, defendant's assertion that trial counsel pressured her to plead guilty is nothing more than a bald assertion that is contradicted by the record.

Next, defendant contends that trial counsel misinformed her that she would be sentenced to no more than ten years. A defendant's Sixth Amendment right to a fair trial extends to the plea-bargaining process and "an attorney's gross misadvice of sentencing exposure . . . constitutes remediable ineffective assistance." State v. Taccetta, 351 N.J. Super. 196, 200 (App. Div. 2002). Here, the prosecutor accurately communicated the nature of the plea and the recommended sentence:

> Your Honor, at this time I'm pleased to report that it's my understanding that today [defendant], here with counsel, has agreed to retract her previously entered plea of not guilty and enter pleas of guilty to Counts [Three] and [Five] of the indictment[,] Your Honor[,] previously referred to. Count [Three] relates to an armed robbery in the first[-]degree. And Count [Five] relate[s] to the conspiracy to kidnap in the second[-]degree.
>
> Your Honor, in exchange for a truthful plea and a factual basis supporting these offenses, as well as a factual basis supporting the actions of her co-defendants, in commission of these crimes, the state will at the time of sentencing recommend the following:

10

> That [defendant] receive a maximum [fourteen] years [in] New Jersey State Prison on Count [Three], and that sentence . . . run concurrent to a maximum [eight] years in New Jersey State Prison on Count [Five].

[(emphasis added)].

Defendant was present in court when the plea terms were set forth on the record. There is no evidence she objected at that time, nor did she seek to withdraw her plea. Moreover, the New Jersey Judiciary Plea Form, which defendant initialed and signed, indicated the recommended sentence of fourteen years. There is no evidence, aside from defendant's bald assertions, that she was ever promised a sentence of no more than ten years.

Finally, defendant asserts her trial counsel failed to provide her with full discovery. More specifically, defendant claims that defense counsel failed to inform her of F.D.'s medical records, which ultimately supported the judge's determination that aggravating factor two, "that the victim . . . was particularly vulnerable[,]" N.J.S.A. 2C:44-1(a)(2), applied.

We conclude, as did Judge Wilcox, that defendant's trial counsel strategically argued that because defendant was not in the apartment at the time of the offense, no physical harm was contemplated by her and, therefore, aggravating factor two did not apply to her. Strategic choices by counsel "will not serve to ground a constitutional claim of inadequacy . . . ." Fritz, 105 N.J.

11

at 54.  In any event, defendant failed to convince us, in her certification or otherwise, that but for her counsel's failure to obtain these records, she would have rejected the plea offer and proceeded to trial.  See Maldon, 422 N.J. Super. at 486.  In that regard, Judge Wilcox correctly noted defendant was confronted with a thirty-year sentence on the two counts of the indictment that she ultimately pled guilty to.  The plea was thus extremely favorable, and in light of the overwhelming evidence against her, it is unlikely that defendant would have rejected the plea offer and proceeded to trial.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1408-19