**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2549-19

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TIMOTHY E. PARRISH,
a/k/a TIMOTHY E. PARRISH, JR.,

    Defendant-Appellant.

_____

Submitted January 11, 2022 – Decided July 19, 2022

Before Judges Fisher and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Indictment No. 15-11-2024.

Joseph E. Krakora, Public Defender, attorney for appellant (David A. Gies, Designated Counsel, on the briefs).

Lori Linskey, Acting Monmouth County Prosecutor, attorney for respondent (Melinda A. Harrigan, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

A jury convicted defendant of one count of attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3, one count of second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), two weapons charges, N.J.S.A. 2C:39-4(a) and N.J.S.A. 2C:39-5(b), and a certain persons charge, N.J.S.A. 2C:39-7(b)(1). Defendant was sentenced to an extended term of sixty years on the attempted murder conviction, consecutive to ten years on the second-degree aggravated assault charge. Each of those sentences was subject to eighty-five percent parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge imposed concurrent terms on the remaining weapons convictions. Defendant appeals, and we affirm.

I.

Victims Roberto Diaz and Frank LaVacca were shot on December 27, 2014 at approximately 2:00 a.m. in an alley near East Main Street in Freehold Borough. Police responded to the scene. First aid responders transported Diaz and LaVacca separately to the Jersey Shore Medical Center in Neptune. A police officer accompanied Diaz on his trip to the hospital, Freehold Officer Zandra Vega.

Detective John Reiff of the Freehold Police Department began an investigation of the shooting by searching the alley and securing a copy of a nearby café's surveillance video footage. Upon returning to police headquarters, Detective Reiff viewed the video, and recognized defendant's brother, Tahir Parrish, as someone he knew from the community. Detective Reiff then showed the footage to Officer Vega, first as a still shot which depicted the moment of the shooting, then the entire video. Officer Vega recognized both victims, Tahir Parrish, and defendant. Tahir Parrish, when questioned by police, stated that his brother Timothy fired a weapon in the alley. In the hospital, police showed Diaz, one of the victims, a photo array. He identified defendant, not by name, but as a "familiar face."

Defendant was indicted and charged with two counts of first-degree attempted murder, first-degree unlawful possession of a weapon, second-degree unlawful possession of a weapon, and a second-degree certain-persons offense. Before trial, defendant moved to challenge the admissibility of Officer Vega's identification. Counsel and the court differed on the basis for defendant's position. The court initially framed the issue as one of witness reliability, but trial counsel argued that the facts did not quite fit a classic witness reliability

A-2549-19

challenge in that Officer Vega knew defendant for many years before the shooting.

Defendant instead posited that the prejudicial effect of Officer Vega's testimony outweighed its probative value under N.J.R.E. 403. Defendant's position was that the State was going to present two eyewitnesses to the shooting, Tahir Parrish and Diaz. He argued the court should not allow the testimony of a uniformed officer to identify the shooter on the video.

The court considered defendant's application under both theories, rejecting the Rule 403 argument and concluding that defendant failed to show suggestiveness, a necessary precursor to holding a Wade-Henderson[1] hearing.

Defendant was tried and a jury convicted him. On appeal, defendant argues the following:

> POINT ONE
>
> THE MOTION JUDGE ERRED WHERE SHE DID NOT CONDUCT A "CONFIRMATORY IDENTIFICATION" HEARING TO DETERMINE THE POLICE OFFICER'S FAMILIARITY WITH DEFENDANT.

---

[1] United States v. Wade, 338 U.S. 218 (1967); and State v. Henderson, 208 N.J. 208 (2011).

4

POINT TWO

THE TRIAL JUDGE DID NOT CONSIDER THE REAL-TIME CONSEQUENCES WHEN DECIDING TO IMPOSE A SIXTY-YEAR EXTENDED TERM SENTENCE. (Not Raised Below)

POINT THREE

THE CIRCUMSTANCES DO NOT WARRANT A FINDING THAT DEFENDANT IS UNLIKELY TO BE REHABILITATED SO AS TO SERVE AS A BASIS TO IMPOSE A CONSECUTIVE TERM.

II.

Denial of a <u>Wade</u> hearing is reviewed for abuse of discretion. <u>State v. Ruffin</u>, 371 N.J. Super. 371, 391 (App. Div. 2004); <u>State v. Kounelis</u>, 258 N.J. Super. 420, 428 (App. Div. 1992); <u>State v. Ortiz</u>, 203 N.J. Super. 518, 522 (App. Div. 1985). <u>See also</u> <u>State v. Anthony</u>, 237 N.J. 213, 234 (2019) (<u>Rule</u> 3:11(d) "empowers the court, 'in its sound discretion and consistent with appropriate case law' to 'declare the identification inadmissible, redact portions of the identification testimony, and/or fashion an appropriate jury charge . . . .'").

In <u>State v. Pressley</u>, 232 N.J. 587, 592-93 (2018), the Court discussed confirmatory identifications, "which [are] not considered suggestive[,]" in which "a witness identifies someone he or she knows from before but cannot

A-2549-19

identify by name."  Even if police show only one photograph to such a witness, the procedure is not considered suggestive.  Ibid.

The record shows that Officer Vega knew defendant from living in the same community.  She had encountered him multiple times over a twenty-year period and knew his father and Tahir.  Before becoming a police officer, Vega was a counselor in a youth counseling program that defendant's younger siblings, including Tahir, participated in.  She last saw defendant a few weeks before the shooting, and she testified that she was "100% certain" of her identification of defendant in the alleyway video.

Given Officer Vega's familiarity with defendant over two decades, including years when she was a neighbor to defendant's father and counselor to defendant's siblings prior to becoming a police officer, we find no suggestive aspect to this identification.[2]  Regardless of what label this identification process is given, we are not persuaded by defendant's arguments that Officer Vega's prior contact was "minimal," and warranted further scrutiny.  Defendant argues

---

[2] We reject defendant's argument that People v. Rodriquez, 593 N.E.2d 268 (N.Y. 1992) should apply here in support of the principle that a separate "confirmatory identification hearing" should be conducted by the court when a confirmatory identification fact pattern reveals itself.  Pressley tells us that Wade principles control here. Pressley, 232 N.J. at 591-92.  No separate analysis is required in our jurisprudence.  Ibid.

A-2549-19

that additional details, such as the length of any conversations between Officer Vega and defendant, the presence of defendant's father at some of their encounters, or the fact "a few weeks" elapsed between the last time Officer Vega saw defendant and the shooting, were necessary to establish reliability on this record. We disagree, and we find the motion court did not abuse its discretion in denying a Wade hearing.

## III.

We deferentially review a trial court's sentencing determination and do not substitute our judgment for that of the sentencing court. State v. Rivera, 249 N.J. 285, 297 (2021). We affirm unless the sentencing guidelines are violated, the aggravating and mitigating factors found are not based upon competent credible evidence in the record, or the trial court's application of the sentencing guidelines make the sentence so clearly unreasonable as to shock the judicial conscience. State v. Roth, 95 N.J. 334, 364-65 (1984).

The sentencing court found that defendant's criminal history started with six contacts as a juvenile, culminating in his committing an offense at age seventeen for which he was waived to adult criminal court. The record showed defendant pled guilty to second-degree aggravated assault in that case, and that he was sentenced to a ten-year term of incarceration with an eight-year term of

parole ineligibility in 2004. The sentencing court noted that the current matter represented defendant's second adult offense, with both offenses involving acts of violence.

The court found aggravating factors three, N.J.S.A. 2C:44-1(a)(3), six, N.J.S.A. 2C:44-1(a)(6), and nine, N.J.S.A. 2C:44-1(a)(9), based on its consideration of the extensive record, including surveillance video which captured relevant events, before, during, and after the shooting. The court considered and rejected defense arguments for mitigating factors three and four, N.J.S.A. 2C:44-1(b), explicitly finding no basis in the record for their application. The court found no other mitigating factors. The sentencing court went on to conduct a proper Yarbough[3] analysis as it imposed consecutive sentences.

Although we may consider allegations of errors or omissions not brought to the court's attention if they meet the plain error standard under Rule 2:10-2, we frequently decline to consider issues not raised below nor properly presented on appeal. See State v. Walker, 385 N.J. Super. 388, 410 (App. Div. 2006). Recognizing that we are not bound to address arguments on appeal not raised in the trial court, we proceed with an analysis of points II and III of the defendant's

---

[3] State v. Yarbough, 100 N.J. 627, 643-44 (1985).

argument, as the merits of point II, which were not raised before the trial court, are sufficiently intertwined with the merits of point III, which were. We address defendant's point II using the plain error standard.

Defendant argues for the first time before us that the sentencing court failed to consider the real-time consequences of the imposition of a sixty-year extended term sentence on the attempted murder conviction. We are not persuaded. The sentencing court explicitly addressed the issue:

> [t]he aggregate sentence that this [c]ourt has imposed is a 70-year period of incarceration. 85 percent of that needs to be served before he will be eligible for parole. That amounts to 25,550 days and 21,718 days needs to be done before he's eligible for parole. That's 58 years and four months.

The record shows the court was aware of defendant's age at the time of sentencing, thirty-three, and it fully explained to him the consequences of the full seventy-year sentence as well as the parole ineligibility term. "We recognize, as the trial court recognized, that defendant may spend the rest of his life in jail." State v. Liepe, 239 N.J. 359, 379 (2019). The trial court's "task was not to ensure defendant's eventual release, but to devise a sentence commensurate with defendant's crimes." Ibid. Reviewing this point on appeal using the plain error standard, we cannot say that the court's findings were "clearly capable of producing an unjust result." Rule 2:10-2.

9

Defendant next argues that the "circumstances" in this record do not "indicate that defendant is the type of repetitive offender not likely to be rehabilitated . . . ." State v. Mosch, 214 N.J. Super. 457, 464 (App. Div. 1986). He contends that without this finding, it was error for the sentencing court to impose a consecutive term. We find no merit in the argument, as the sentencing court made detailed findings, including: defendant's engagement in anti-social behavior since the age of fourteen; the absence of provocation for the shooting; and the fact that defendant was out on parole for a previous violent offense when he shot Diaz and LaVacca. The court did not abuse its discretion when it found defendant was not likely to be rehabilitated and that imposition of consecutive sentences was appropriate for protection of the public.

To the extent that we have not addressed any remaining arguments by defendant, it is because they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2549-19