153 N.J. Super. 362 (1977)
379 A.2d 866
THE STATE OF NEW JERSEY, PLAINTIFF,
v.
MARVIN E. STOCKLING, DEFENDANT.
Superior Court of New Jersey, Law Division, Union County.
Decided October 17, 1977.
*363 Mr. Francis W. Gasiorowski, Assistant Prosecutor of Union County, for the State.
Ms. Veronica C. Leonard for the County of Union.
Mr. John M. Cannel, argued the cause for the State of New Jersey, Office Of The Public Defender.
Mr. Albert G. Fredericks, argued the cause for the Attorney General's Office.
Mr. Alfred M. Wolin, argued the cause for the Defendant.
CALLAHAN, J.D.C., Temporarily Assigned.
An indigent defendant charged with first degree murder[1] moved that certain services required to adequately prepare his defense, a psychiatrist evaluation and a pathologist consultation, be provided at public expense. Since defendant is represented by private counsel paid for by his parents, his right to any such services was questioned. This court held on initial return date of the motion that defendant's eligibility as an indigent[2] adult is not affected by his parents' voluntary decision *364 to provide legal representation. State v. Morganstein, 147 N.J. Super. 234, 238-40 (App. Div. 1977). The court further held that the requested services were both necessary and reasonable, and directed defendant to procure same. He has since done so. The only issue remaining for decision is which public body must pay for these services: the county or the State through the Office of the Public Defender.
The court was faced with this issue in several reported cases; in none, however, was the court compelled to decide it. Typically, a court could "assume" the county to be the proper body to bear the expense. See, e.g., State v. Ryan, 133 N.J. Super. 1, 12 (Cty. Ct. 1975). See also, State v. Lippincott, 124 N.J. Super. 498, 501 (Munic. Ct. 1973), in which the court held that the county rather than the City of Trenton should pay for such services. Unquestionably, had this issue arisen prior to the enactment of the Public Defender Act, N.J.S.A. 2A:158A-1 et seq., this obligation would have fallen upon the county. In State v. Rush, 46 N.J. 399, 414 (1966), the court held: "That the county must meet the cost of criminal prosecutions is clear. * * * Within that category must fall the expense of providing counsel for an indigent accused, without which a prosecution would halt and inevitably fail under Gideon v. Wainwright, supra, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799." The county contends here, however, that this rule was altered by the Public Defender Act, N.J.S.A. 2A:158A-1 et seq., so that all services must now be provided to indigent defendants through the Public Defender's Office, regardless of whether the particular defendant is represented by the Public Defender or by counsel paid for by a third party.
The question is one of pure statutory interpretation  whether the Legislature intended that the Office of the Public Defender should pay for all necessary and reasonable expenses *365 incurred in the defense of an indigent defendant not represented by that office. Two sections of the Public Defender act are pertinent to the issues raised herein. N.J.S.A. 2A:158A-5 (§ 5) provides in part:
It shall be the duty of the Public Defender to provide for the legal representation of any indigent defendant who is formally charged with the commission of an indictable offense.
All necessary services and facilities of representation (including investigation and other preparation) shall be provided in every case.
In addition, N.J.S.A. 2A:158A-14 (§ 14) defines eligibility as follows:
Eligibility for the services of the Office Of The Public Defender shall be determined on the basis of the need of the defendant. Need shall be measured according to the financial ability of the defendant to engage and compensate competent private counsel and to provide all other necessary expenses of representation.
I find the sections quoted reasonably free from ambiguity. Section 5 clearly directs the Public Defender to provide not only counsel, but also whatever supplementary services may be required. No condition is stated, and none can be reasonably implied, which would necessitate counsel being provided before the Public Defender can supply supplementary services. Nor does the eligibility provision, § 14, require the use of a Public Defender attorney before other services can be provided. Indeed, by basing eligibility "for the services of the Office of the Public Defender" solely upon "the need of the defendant," the wording of the statute appears to lead to the opposite conclusion. Certainly the Legislature could have easily included language directing that such supplementary services would be available through the Public Defenders Office only when that office also supplied counsel. The Legislature having failed to do so, this court is bound to follow what it finds to be the reasonable meaning of the words used.
*366 The court having found the statutory language unambiguous, the inquiry could end here. However, the court recognizes that reasonable persons could differ with its interpretation of the bald statutory language, requiring an examination of whatever extrinsic information is available.
As with any question of statutory interpretation, the primary issue is legislative intent.
The inquiry in construing statutes is to determine the purpose and intent of the Legislature. Blackman v. Iles, 4 N.J. 82, 89 (1950). Legislation must be accorded a rational interpretation consistent with its manifest purpose. "The true meaning of any clause or provision of a statute ordinarily is that which best comports with the subject and general object of the statute." Central R.R. Co. of N.J. v. Director, Division of Tax Appeals, 8 N.J. 15, 28 (1951). [Markey v. City of Bayonne, 24 N.J. Super. 105, 112 (App. Div. 1952)]
See, also, State v. Fearick, 69 N.J. 32, 37 (1976); Wollen v. Fort Lee, 27 N.J. 408, 418 (1958); Sperry and Hutchinsen Co. v. Margetts, 15 N.J. 203, 209 (1954). Simply put, the courts "are concerned with the internal sense of the law. The intent of the lawgivers and the spirit of their legislation must prevail." State v. Gill, 89 N.J. Super. 104, 108 (App. Div. 1965). See also, State v. Carter, 64 N.J. 382, 390 (1974).
A primary source for determining this intent is legislative history. Brewer v. Porch, 53 N.J. 167, 174 (1969); Gudgeon v. Ocean Cty., 135 N.J. Super. 13, 16 (App. Div. 1975). An examination of the legislative history of the Public Defender Act discloses that little or no consideration was given to the precise issue involved herein. Relevant information exists, however, regarding the overall purposes of the act, and its financing in particular. Discussing whether the State should carry the entire financial burden of a Public Defender's Office, or if it should be shared with the counties, the New Jersey Commission on the Defense of Indigent Persons Accused of Crime (the Commission) said:
*367 The Commission has concluded that the cost of providing the service of the Defender Office should be borne entirely by the State without any provision for apportionment either of the entire cost or of any part thereof among the counties.
The reasons for this go both to quality and cost of the operation. An arrangement in which the expenses are shared would inevitably involve a division of responsibility as well as increased overhead.
If it were possible to keep a complete separation between the structure and operation of the system on the one hand and the financing on the other, there would be room to give consideration to a system of cost sharing, assuming that some useful purpose were to be served by such sharing. Extended discussion of possible formulas for sharing and of the quid pro quo which the counties would expect in return made it perfectly clear that it would be unrealistic to expect the mode of operation and its cost to be independent of the source of financing.
The point that cannot be overlooked here is that the type of service to be performed by the Defender Office will be unique. Our judicial system is adversary in nature, and it must be the prime object of a defender system to approximate as closely as possible the service that would be rendered to the accused by private counsel engaged, even though the defender system is paid for by the public, which also pays for the police and the prosecutor who press the charge of guilt. All other considerations must be subordinated to this object. It is legitimate, of course, to look for ways to achieve economy in the operation of such a system, so long as the quality and uniformity of the service are not thereby compromised. This, it seems clear, can best be accomplished through the structure of a single system for the entire State, designed to concentrate on the service to be rendered at greatest feasible efficiency, and with as little as possible of collateral burdens such as would be involved in dealing with twenty-one separate boards of freeholders. [Report of the Commission 2 (December 22, 1966)]
The Commission's recommendations in this regard were accepted by the Legislature.[3]L. 1967, c. 43, § 24.
*368 The language of the statute and the Commission report lead inexorably to the conclusion that the Legislature, in enacting the Public Defender Act, attempted to provide a unitary system through which all services necessary for an adequate defense of an indigent defendant would be supplied. No exceptions were made should defendant have counsel supplied by a third party, and none will be implied. It is not within the province of this court to pass upon the wisdom of this, or any, legislative enactment. Rather, it is the duty of the court to enforce the law as it is written and as the court interprets it.
The State of New Jersey, through the Office of the Public Defender, is hereby ordered to pay the submitted professional bills incurred by defendant.
NOTES
[1] Subsequent to the services herein involved being ordered and provided, defendant pled guilty to the charge of manslaughter. Of course, the issues raised by this motion survive that plea.
[2] The Attorney General was subsequently requested to appear and argue concerning the effect of pertinent statutory sections. At the final hearing counsel, with the exception of the Attorney General, stipulated to: (a) defendant's indigency within the meaning of N.J.S.A. 2A:158A-2; (b) the necessity of the services ordered, and (c) the reasonableness of the charges therefor. It is, therefore, clear that had defendant applied to the Public Defender's Office, it would have been compelled to accept him as a client and to provide the services ordered herein.
[3] This decision was made only after much discussion and debate. Compare Hearings on Proposed Public Defender Office before the New Jersey Senate Committee to Determine the Advisability of Providing for the Establishment of a Public Defender System in the Several Counties 35 (September 8, 1965) (testimony of George H. Hillman, President of the New Jersey State Bar Association) and Hearings on Proposed Public Defender Office before the Commission 58 (November 25, 1966) (testimony of Anthony T. Greski, Burlington County Freeholder) (both advocating full assumption of the cost by the State) with Hearings on Proposed Public Defender Office before the Commission 54 (November 25, 1966) (letter from Arthur J. Sills, Attorney General of New Jersey) (advocating a sharing of the expense between the State and the counties).