167 N.J. Super. 212 (1979)
400 A.2d 801
FREDERICK C. NORTON, ESQ., PLAINTIFF-APPELLANT,
v.
STATE OF NEW JERSEY, OFFICE OF THE PUBLIC DEFENDER, BYRAM TOWNSHIP MUNICIPAL COURT, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY AND STEPHEN M. SOYARS, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued March 12, 1979.
Decided April 2, 1979.
*214 Before Judges FRITZ, BISCHOFF and MORGAN.
Mr. Frederick C. Norton, appellant, argued the cause pro se.
Mr. John M. Cannel, Assistant Public Defender, argued the cause for respondent State of New Jersey, Office of the Public Defender (Mr. Stanley C. Van Ness, Public Defender, attorney).
PER CURIAM.
The problem presented by this appeal has its source in the fact that although N.J.S.A. 2A:158A-5.2 requires the Public Defender to provide legal representation to those indigent defendants charged with nonindictable offenses that subject them to possible imprisonment or other consequences of magnitude, the Legislature has appropriated no funds with which this duty, mandatory in nature, can be implemented. The enactment was the legislative response to Rodriquez v. Rosenblatt, 58 N.J. 281 (1971), which held such defendants entitled to representation. Pending legislative action providing the means by which such representation would be afforded, defendants found so entitled had been assigned counsel in accordance with R. 3:27-2. N.J.S.A. 2A:158A-5.2 was enacted in 1974 with its effective date deferred until July of 1976. During this delay, the Legislature funded some pilot projects managed by the Public Defender, "to establish `how best to represent the interests of indigents at the least cost to the State.'" Fiscal Note to Assembly Bill, No. 1298, May 6, 1974. Although those projects have terminated, we are told that no funds have since been appropriated to enable compliance with the duties imposed by N.J.S.A. 2A:158A-5.2, even though the Public Defender has made annual requests therefor since 1976.
The present litigation was generated by the municipal court-appointment of plaintiff, an attorney, as counsel to Stephen M. Soyars, an indigent, charged with drunk driving. Conceiving that the Public Defender was bound to afford *215 Soyars the legal representation assigned him, plaintiff filed a verified complaint and order to show cause with the Superior Court, Law Division, in which he sought relief from or a stay of his assignment, an order requiring the Public Defender to assume Soyar's defense, and a declaration of the legislative intent evidenced in N.J.S.A. 2A:158A-5.2. Relief was denied and plaintiff proceeded with Soyars' defense to a conclusion. He has taken this appeal in an effort to resolve the problem created by the fact that N.J.S.A. 2A:158A-5.2 remains unfunded.
We recognize that in the strictest sense, the issues raised in the trial court are now moot. Soyars has received the representation to which he was entitled. Plaintiff never did request payment of a fee from the Public Defender as part of the relief sought. He has not attempted to do so in this court and is cognizant of the possibility, about which we decline comment, of making a claim against the county for services rendered the indigent. See State v. Rush, 46 N.J. 399, 412-416 (1966); State v. Horton, 34 N.J. 518, 534-535 (1961).
Notwithstanding the importance of the issue raised and the uncertainty with respect to the Public Defender's obligation that will persist without a resolution by this court, we decline jurisdiction of this matter not only because of its mootness but, more significantly, because of the insufficiency of the record before us. We do, however, feel compelled to comment on the problem plaintiff has brought to light at no small personal expense.
The fact that N.J.S.A. 2A:158A-5.2 is totally unfunded is, of course, an anomaly. We confess uncertainty as to what the Legislature intended to be done. Did it intend, as plaintiff contends, that the Public Defender use whatever funds were appropriated to provide representation for all classes of defendants, indicted and nonindicted, as well as juveniles, indiscriminately without regard to the fact that the funds so used would not last through the fiscal year? Or did the Legislature intend the Public Defender to exercise *216 discretion in determining which defendants would be given prior claim to the funds available, thus providing representation to indicted defendants and juveniles, and relegating those charged with nonindictable offenses to the representation of counsel assigned on a rotating basis?[1]
The answers to these questions are not apparent to us without resort to conjecture and surmise. It is, however, manifestly clear that the urgency of the mandate contained in N.J.S.A. 2A:158A-5.2 has been dissipated to a considerable degree by the Legislature's failure to appropriate any funds to implement it despite two requests therefor by the Public Defender. Ultimately, the Legislature will have to choose between repeal of the enactment, deferral of its effect until a future date or funding of it by adequate appropriation. In the interim, the means to carry out the command of N.J.S.A. 2A:158A-5.2 have been denied. Whether or not the Public Defender is to defend those charged with nonindictable offenses rests, in the final analysis, with the Legislature.
The existence of the enactment unfunded creates, in the interim, a continuing dilemma to all called upon to deal *217 with it. Until the problem is legislatively resolved, representation of those charged with nonindictable offenses will be in accord with the counsel of State in Interest of Anthony Antini, Jr., 53 N.J. 488 (1969):
This means, of course  as we believe the legislature fully appreciates  that sufficient money must be provided at the state level to enable the Public Defender to engage sufficient personnel to man all courts expeditiously. If the appropriation made to him proves insufficient in any fiscal year, we shall have to return, for the balance of such year, to the compensation scheme set forth in Rush as to both adult and juvenile courts. [at 495]
Dismissed. No costs.
NOTES
[1] State v. Senno, 79 N.J. 216 (1979), clearly suggests the existence of such discretion, albeit in a different context. In considering the contention of petty offenders that lack of funds for county pretrial intervention programs was depriving them of equal protection of the laws, the court said:

Finally we note that fiscal and administrative constraints may be legitimately considered. Lack of money or manpower places pragmatic limitations on many a worthy endeavor. Nor, as is here contended, are such considerations impermissible. For instance, limited resources available for welfare may be allocated by a State in a manner which favors some above others provided a rational basis for the allocation is perceived. * * * So, too, the exclusion of a class of addicts from a rehabilitation program may rest, in part at least, upon a State's determination to allocate finite resources in aid of those most likely to benefit from the program. * * * The State is able to recognize degrees of harm and strike at what it believes to most urgently require attention. [at 228; citations omitted]