192 N.J. Super. 391 (1983)
470 A.2d 39
STATE OF NEW JERSEY, PLAINTIFF,
v.
O. LINARES, I. RODRIGUEZ, M. CORREA AND J. SUAREZ, DEFENDANTS.
Superior Court of New Jersey, Law Division Essex County.
Decided October 7, 1983.
*393 John M. Cannel for defendants (Joseph H. Rodriguez, Public Defender of New Jersey, attorney).
David Ben-Asher for respondent Essex County.
Marc J. Friedman for plaintiff (George Schneider, Essex County Prosecutor, attorney).
STERN, J.S.C.
The Office of the Public Defender seeks reimbursement from the County of Essex for expenses in connection with payment of interpreters who translate court proceedings for non-English speaking defendants during criminal cases. The issue arises in the context of a concluded matter, but the Public Defender in essence seeks a declaration that the county must pay for such expenses in the future. County counsel originally posed a procedural concern because the issue arises in the context of a collateral motion in a criminal case. There are various issues concerning procedure, including the absence of a civil suit and discovery incident thereto. However, during argument it became clear that there is no prejudice to the county from the nature of these proceedings and that the parties have been given adequate time to obtain discovery and to canvass the relevant practices throughout the State. As a result, the county poses no procedural objection, and I will not dispose of the issue on that ground. However, I will consider only the questions before me in the context of the particular criminal case in which the issue arises.
There can be no doubt that a defendant in a criminal case has the right to the assistance of an interpreter so that he can understand the nature of the ongoing proceedings. The constitutional right of a defendant to such assistance has already been established. State v. Vasquez, 101 Utah 444, 121 P.2d 903 (Sup.Ct. 1942); Chavira Gonzales v. United States, 314 F.2d 750 (9 Cir.1963); Tapia-Corona v. United States, 369 F.2d 366 (9 Cir.1966); United States ex rel. Negron v. State of New York, *394 310 F. Supp. 1304 (E.D.N.Y. 1970), aff'd 434 F.2d 386 (2 Cir.1970). After Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) extended the Sixth Amendment right of confrontation of adverse witnesses to the states through the Fourteenth Amendment, the states construed that right to include an interpreter for the defendant so that he can meaningfully understand the proceedings and consult with counsel concerning examination and cross-examination.
Recently, the Supreme Court of Oklahoma addressed the full extent of the right to an interpreter in Application of Murga, 631 P.2d 735 (Okl.Sup.Ct. 1981):
When a defendant cannot speak or understand English, however, several of these rights cannot be preserved without the assistance of an interpreter. Among these rights are the right to counsel, the right to confront adverse witnesses, the right to cross-examine those witnesses, and the right to be present at one's own trial. Without an interpreter any prosecution of those defendants would be constitutionally infirm. [at 736]
The question before me is not whether an indigent defendant has the right to the assistance of an interpreter but whether that assistance should be provided at the expense of the state or county government. New Jersey has a statutory provision permitting the appointment of court interpreters in certain counties, and providing for the compensation of such interpreters. N.J.S.A. 2A:11-28; -28.1; -29. In 1967 the New Jersey Legislature adopted the Public Defender Act, N.J.S.A. 2A:158A-1 et seq., in response to decisions of the United States Supreme Court and New Jersey Supreme Court implementing the constitutional guarantee to an indigent defendant in a criminal case of the right to counsel and the related costs of criminal proceedings at public expense.
The Public Defender Act provides, in part, that "[a]ll necessary services and facilities of representation (including investigation and other preparation) shall be provided in every case." N.J.S.A. 2A:158A-5. The county, in opposition to this motion, claims that the services of an interpreter should be included in those services which are needed and required to a proper defense and which should therefore be provided for and paid by the *395 Office of the Public Defender. Cf. State v. Stockling, 153 N.J. Super. 362 (Law Div. 1977), rev'd on other grounds 160 N.J. Super. 486 (App.Div. 1978); State v. Morgenstein, 141 N.J. Super. 518 (Law Div. 1976), rev'd 147 N.J. Super. 234 (App.Div. 1977); See also State v. Rush, 46 N.J. 399 (1966).
It appears that the Public Defender Act of 1967 does not specifically address this issue, and that N.J.S.A. 2A:11-28 and 29 appear to be discretionary at least with respect to counties other than first class counties with a population of more than 800,000.[*]
On its face N.J.S.A. 2A:11-28 does not appear to apply exclusively to interpreters for witnesses. It provides that "... whenever the transaction of the public business of the Superior Court, the County Court and the juvenile and domestic relations courts ... will be expedited or improved" by appointment of interpreters, the interpreters may be appointed. By virtue of the 1978 constitutional amendment, the duty to appoint falls upon the assignment judge. In first class counties with a population above 800,000, the statute provides that the interpreters are to be appointed by the sheriff.
On its face, N.J.S.A. 2A:11-28 can be read to require the county to pay the expenses at issue. However, there is no evidence in terms of legislative history to the effect that this type of service was envisioned to fall within the meaning of the statute, at least since the Public Defender Act was subsequently adopted. As such expenses are constitutionally required, the county would be required to pay but for the Public Defender Act. See State v. Rush, 46 N.J. 399 (1966); In re Antini, 53 N.J. 488 (1969). Once the Public Defender's Office was created, it *396 appears that the State, through the Public Defender, became obligated to pay all expenses connected with the defense of a criminal case where the Public Defender represented an indigent. See In re Stockling, supra. The Public Defender system was, inter alia, designed to centralize and unify the funding for all cases involving indigents charged with crimes. While the Public Defender cannot be compelled to pay for expenses on behalf of indigents who do not utilize his services, the Public Defender is obligated to pay all expenses necessary for the defense of indigents he represents. See In re Stockling, supra; Cf. In re Norton, 167 N.J. Super. 212 (App.Div. 1979); N.J.S.A. 2A:158A-5.2; R. 3:27-2 (regarding nonindictable offenses with respect to which the Public Defender has not yet received funding). The need for interpreters for witnesses is far different than for the defendant himself. A non-English speaking witness must be understood by the jury, attorneys and the court as well as the defendant. The county does not contest its obligations under N.J.S.A. 2A:11-28 to provide interpreters for witnesses who testify on the stand.
The Public Defender candidly recognizes its obligation to supply interpreter assistance for attorney-client conferences, during trial and otherwise. See N.J.S.A. 2A:158A-5. From a constitutional point that may be required so that there is no deemed interference of attorney-client communications. Whether or not the interpreters must be supplied by his office for such purposes, the Public Defender does in fact properly provide these services. That being the case, it is hard to envision how payment can be allocated when, as in the case before me, the same interpreter translates court proceedings and attorney-client discussions based thereon, as part of one ongoing transaction. The Public Defender hires the interpreters for this purpose, and the county has nothing to say about the amount to be paid or conditions of employment. It would be unnecessarily expensive and impractical to expect interruption of ongoing proceedings so that a different interpreter could be substituted while the attorney and his client exchanged a few words, or for *397 a single interpreter to record allocation of time between attorney-client conferences and translation of court proceedings. Similarly, it would be expensive and impractical to substitute interpreters at recesses and the like for purposes of permitting attorney-client conferences. It cannot be assumed that the Legislature envisioned such unnecessary expense or impracticality. Moreover, knowledge of the proceedings are an integral part of the attorney-client conference, and preparation for which the Public Defender is obligated. Given the Public Defender's admitted obligation in terms of financing all aspects of attorney-client communications, the Public Defender must be obligated to pay all expenses related to the need for translation for the defendant himself.
The Public Defender, however, points to the Compilation of Administrative Directives for New Jersey Judges promulgated by the Administrative Director of the Courts. This compilation provides, in part:
Use of Interpreters
In criminal cases the county is to bear the expense of interpreters. An interpreter should be provided for the complete trial of a defendant who does not speak English. For interpreters for the deaf see Page 144. Summary of Assignment Judges Meeting, 5/21/71.
The Board of Freeholders must provide for the necessary court interpreters, either by salaried interpreters or by per diems, depending upon the needs as set out by the court. Summary of Assignment Judges Meeting, 6/15/72. [Administrative Office of the Courts, Compilation of Administrative Directives for New Jersey Judges, at 123]
I, of course, must acknowledge the binding effect of an administrative directive. The Supreme Court has the power to promulgate rules of administration as well as practice and procedure, see N.J.Const. (1947), Art. VI, § II, par. 3, and independently, the Chief Justice, as administrative head of the court system, can promulgate binding directives either directly or through the Administrative Director of the Courts. See N.J. Const. Art. VI § VI, Par. 7.
I need not decide if the quoted passage is substantive or procedural. All procedural directives involve some substance. See Winberry v. Salisbury, 5 N.J. 240 (1950); Busik v. Levine, 63 *398 N.J. 351 (1973) cert. den. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). The passage quoted above from the compilation of directives, and N.J.S.A. 2A:11-28, were both designed for the expeditious and appropriate processing of cases  clearly involving matters of administrative concern. See Passaic County Probation Officers Ass'n v. Passaic County 73 N.J. 247 (1977). Cf. Clark v. Degnan, 163 N.J. Super. 344 (Law Div. 1978), mod. 83 N.J. 393 (1980). The quoted passage, however, is simply not a directive. Rather, it is a summary of an assignment judges' meeting, a meeting conducted to discuss issues of common concern leading to resolutions pending further developments of law, including case law development, supreme court rule adoption or chief justice decision. Moreover, a canvass of all counties seems to indicate no uniformity in terms of payment, and the practice in Essex County for some time has been for the Public Defender to pay the contested expenses with respect to proceedings in the adult criminal courts. Of course, administrative practice by implementing agencies is generally of significance, although here the diversity of practice from county to county  including counties of the first class  does not indicate any uniformly established administrative practice. Cf. In re Estate of Gillmore, 101 N.J. Super. 77, 85 (App.Div. 1968), Certif. den. 52 N.J. 175 (1968); State Troopers Fraternal Ass'n. v. State, aff'd. 62 N.J. 302 (1973) aff'd 119 N.J. Super. 375 (App. Div. 1972). I therefore do not decide the case on the basis of any directive. Moreover, the varying practices from county to county in terms of who pays for the expenses of the interpreters show that the assignment judges do not believe that the above-quoted summary is in fact a directive.
N.J.S.A. 2A:11-28 and the summary of directives may be read to permit the county to provide interpreters to interpret court proceedings for non-English speaking defendants. But, irrespective of that, at least where the county does not do so or where the court does not order the county to provide such assistance at county expense due to the particular circumstances in the county, it is clear that the Public Defender must supply *399 the services of the interpreter for the benefit of the defendant. I need not consider the policy or legal issues surrounding possible diversity among counties or between first class counties with populations over 800,000 and other counties. The Public Defender has provided these services in Essex County for some time and probably since 1967. He is required to do so, at least in the absence of county employees performing such services. In any event, the only real issue before me is whether the county must reimburse the Public Defender for the payment incident to such services already provided. The clear answer to that question is in the negative.
For the foregoing reasons, given N.J.S.A. 2A:158A-5 and the authority of the Public Defender to hire necessary personnel to assist in providing proper representation, N.J.S.A. 2A:158A-7, the motion of the Public Defender is denied.
My decision preserves the status quo in the criminal courts of this county. If it did not, I would stay my order. No criminal case in this county or otherwise can be delayed by consideration of this issue. The criminal calendar must go forward pending further proceedings  including appeals  respecting this decision. The Public Defender shall continue to provide interpreter services in the future as in the past.
NOTES
[*] Essex County is a county of the first class and has a population over 800,000. Such first class counties may be required to appoint interpreters. The mandatory-discretionary issue is not pursued herein as Essex has a staff of full time interpreters within the sheriff's office. See N.J.S.A. 2A:11-28, last paragraph. Of course, if the county must provide more interpreter services a larger staff may well be required.