SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

**State v. Oscar R. Juracan-Juracan (A-32-22) (087849)**

**Argued June 1, 2023 -- Decided August 15, 2023**

**PIERRE-LOUIS, J., writing for the Court.**

The Court considers a question of first impression -- whether a criminal defendant must be provided in-person interpreting services, rather than video remote interpreting (VRI) services, at his jury trial.

In response to the COVID-19 pandemic, the Court announced amendments to the New Jersey Judiciary's Language Access Plan (LAP) and expanded the circumstances in which remote interpreting services may be used. Prior to the update, VRI was allowed only for "emergent matters" or "short non-emergent matters of 30 minutes or less." The 2022 LAP now allows VRI for both "emergent and routine proceedings," subject to judicial discretion.

In 2019, defendant Oscar R. Juracan-Juracan, a native speaker of Kaqchikel -- a language spoken by approximately 450,000 people worldwide -- was charged with several offenses related to an alleged sexual assault. During pre-trial proceedings, he requested a Kaqchikel interpreter and one was provided. The interpreter, however, resided on the West Coast, so he appeared remotely. Additionally, the Kaqchikel interpreter did not speak English, only Kaqchikel and Spanish, so a second interpreter was required to translate to and from Spanish and English.

After the court advised counsel that the Kaqchikel interpreter would continue to participate virtually during the jury trial, defendant moved for in-person interpretation services. During the motion hearing, the Kaqchikel interpreter expressed concerns about his ability to provide interpretation services remotely during the trial. The trial court denied defendant's motion, advising the Kaqchikel interpreter that the court would give him "as much time as you need, understanding the complexities, not only of interpretations, interpreting through two individuals, and also virtually." The trial court reasoned that proceeding with VRI during the trial was "what's financially feasible, what's fair, what's just."

The Appellate Division denied defendant's motion for leave to appeal in light of the VRI policy change. The Court granted leave to appeal. 253 N.J. 283 (2023).

1

**HELD:** In a criminal jury trial, there is a presumption that foreign language interpretation services will be provided in person, which is consistent with the New Jersey Judiciary's longstanding practice. The Court sets forth guidelines and factors to assist trial courts in deciding whether VRI should be used during criminal jury trials, and it remands the matter for the trial court to reconsider whether VRI is appropriate in the current case after assessing those factors.

1. The Sixth Amendment and its counterpart in the New Jersey Constitution afford criminal defendants the right to a fair trial, the right of confrontation, and the right to counsel. And due process protects a criminal defendant's right to a fair trial by guaranteeing the defendant's right to be present and to fully participate during trial. The spoken word is unquestionably the principal method of communication during in-court proceedings, so a participant's ability to understand and communicate through language is key to ensuring the fairness of the proceedings. A criminal defendant in federal proceedings has a statutory right to such assistance, and federal circuit courts have acknowledged a defendant's right to an interpreter. New Jersey courts have also noted a criminal defendant's right to an interpreter and the constitutional underpinnings of that right, which is tied to the defendant's "rights under the confrontation and assistance of counsel provisions of our federal and state Constitutions." See State v. Kounelis, 258 N.J. Super. 420, 422, 425-27 (App. Div. 1992). And other jurisdictions similarly recognize a criminal defendant's right to an interpreter. (pp. 12-17)

2. In 2017, the Judiciary implemented the LAP to ensure all people, including persons with limited English proficiency, have equal access to court proceedings. And the Court has consistently recognized the significance of access to interpreting services. Prior to the COVID-19 pandemic, court proceedings and services generally occurred and were available in-person within Judiciary facilities. Pursuant to the 2017 LAP, the use of remote interpreting services was very limited. The unprecedented circumstances of the COVID-19 pandemic resulted in the widespread use of virtual court proceedings. In 2020, in light of ongoing remote court operations, the Court approved an addendum to the 2017 LAP that expanded the standard for the use of remote interpreting by permitting remote interpreting services to be used for emergent or non-emergent matters even if longer than 30 minutes when an on-site interpreter is not available, including during an emergency that prevents the courts from operating in person. The Addendum also listed several factors for a court to consider in determining how to conduct a court event involving remote interpreting services. In September 2022, the Court revised the LAP in part to formalize judicial discretion to authorize remote interpreting services for emergent and routine proceedings consistent with current and ongoing practices. In contrast to the 2017 LAP, the 2022 LAP expanded the use of remote interpreting from "emergent matters" and "short non-emergent matters" to "emergent or non-emergent matters." And for the first time, the 2022 LAP authorized judges to

2

exercise their discretion to use remote interpreting "when appropriate"; it also provides "Guidelines for Video Remote Interpreting." Those guidelines and the Code of Professional Conduct for Interpreters, Transliterators, and Translators together direct that interpreters' expert opinions -- including about the feasibility of VRI -- be voiced and considered. (pp. 18-23)

3. Applying those principles to the newly revised LAP, the Court sets forth guidelines and factors to assist trial courts in deciding whether VRI should be used during criminal jury trials. Consistent with New Jersey's jurisprudence to ensure all court users have equal access to court proceedings, there should be a presumption of in-person interpreting services for criminal jury trials. In considering whether to proceed to a jury trial with in-person or remote interpreting, trial courts should consider a nonexclusive list of factors: (1) the nature, length, and complexity of the trial; (2) the number of parties and witnesses involved; (3) whether an interpreter is available to interpret in person at trial; (4) the impact any substantial delay in obtaining an in-person interpreter would have on the defendant and on third-parties such as co-defendants or victims; (5) whether the defendant tentatively plans to testify; (6) the financial costs associated with in-person interpreting as compared to remote interpreting; and (7) the interpreters' position as to whether they believe they can adequately fulfill their duties to interpret accurately and meet professional standards while interpreting virtually. In the rare cases in which VRI is used for a criminal jury trial, guardrails should be put in place to ensure a fair trial for defendants, and a trial court's decision to use remote instead of in-person interpreting services should be approved by the Assignment Judge or Presiding Judge. To the extent that costs are a consideration, the vicinage should consult with the Administrative Office of the Courts for further guidance. (pp. 23-25)

4. The Court remands this matter to the trial court for reconsideration of whether VRI is appropriate here. The Court stresses the difference between pre-trial proceedings governed by Rules 3:9 to :13 and criminal trials governed by Rules 3:14 to :19, as well as the obstacles that virtual interpreting may create for defendants to communicate confidentially and spontaneously with defense counsel. In addition to the Kaqchikel interpreter's opinion and the costs involved, all other factors set forth by the Court should be considered in assessing the propriety of virtual interpretation during a criminal jury trial; no single factor is dispositive. (pp. 25-27)

**REVERSED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PIERRE-LOUIS's opinion. JUSTICE FASCIALE did not participate.**

3

SUPREME COURT OF NEW JERSEY
A-32 September Term 2022
087849

State of New Jersey,

Plaintiff-Respondent,

v.

Oscar R. Juracan-Juracan,

Defendant-Appellant.

On appeal from the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| June 1, 2023 | August 15, 2023 |

Christopher M. Godin, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Christopher M. Godin, of counsel and on the briefs).

Stephanie Davis Elson, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Stephanie Davis Elson and Barbara Drasheff, Assistant Prosecutor, on the briefs).

Farrin R. Anello argued the cause for amici curiae National Association of Judiciary Interpreters and Translators and American Translators Association (American Civil Liberties Union of New Jersey Foundation, attorneys; Farrin R. Anello, Alexander Shalom, and Jeanne LoCicero, on the brief).

Norma Esquivel of the New York bar, admitted pro hac vice, argued the cause for amicus curiae LatinoJustice PRLDEF (LatinoJustice PRLDEF, attorneys; Rafaela Uribe and Norma Esquivel, on the brief).

Alan Silber submitted a brief on behalf of amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, attorneys; Alan Silber, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this matter, we consider a question of first impression -- whether a criminal defendant must be provided in-person interpreting services, rather than video remote interpreting (VRI) services, at his jury trial.

In light of the proliferation of virtual court proceedings in response to the COVID-19 pandemic, this Court issued Administrative Directive #10-22, which announced updates to the New Jersey Judiciary's Language Access Plan (LAP) and expanded the circumstances in which remote interpreting services may be used. See Administrative Directive #10-22: New Jersey Judiciary Language Access Plan (Sept. 30, 2022) (Directive #10-22) (promulgating what we refer to here as the "2022 LAP"). Prior to the update, VRI was allowed only for "emergent matters" or "short non-emergent matters of 30 minutes or less." See Administrative Directive #01-17: New Jersey Judiciary Language Access Plan" (Jan. 10, 2017) (Directive #01-17) (promulgating the "2017

2

LAP"). The 2022 LAP now allows VRI for both "emergent and routine proceedings," subject to judicial discretion. Directive #10-22, at 2.

On May 25, 2019, defendant Oscar R. Juracan-Juracan, a native Kaqchikel speaker, was charged with several offenses related to an alleged sexual assault. During pre-trial proceedings, defendant requested a Kaqchikel interpreter and one was provided. The Kaqchikel interpreter, however, resided on the West Coast, so he appeared remotely during pre-trial proceedings. Additionally, the Kaqchikel interpreter did not speak English, only Kaqchikel and Spanish, so a second interpreter was required to translate to and from Spanish and English.

After the trial court advised counsel that the Kaqchikel interpreter would continue to provide interpreting services virtually during his criminal jury trial, defendant filed a motion for in-person interpretation services. During the motion hearing, the Kaqchikel interpreter expressed concerns about his ability to properly provide interpretation services remotely during the trial. The trial court denied defendant's motion for in-person interpretation services. The Appellate Division upheld the trial court's decision based on the recent policy change in Directive #10-22.

We granted defendant's motion for leave to appeal. Although the COVID-19 pandemic has altered traditional courtroom dynamics, it remains

crucial that the fundamental principles of fairness and a defendant's right to fully participate at trial are preserved. We therefore hold that in a criminal jury trial, there is a presumption that foreign language interpretation services will be provided in person, which is consistent with the New Jersey Judiciary's longstanding practice. We accordingly reverse the judgment of the Appellate Division and remand the matter for the trial court to reconsider whether VRI is appropriate in the current case after assessing the factors articulated in this opinion.

## I.

On August 28, 2019, a Hudson County grand jury returned a four-count indictment charging defendant with two counts of first-degree aggravated sexual assault, second-degree burglary, and third-degree terroristic threats.

Defendant is a native speaker of Kaqchikel, one of many indigenous Mayan languages spoken in central Guatemala by approximately 450,000 people worldwide. Kaqchikel Language, Encyc. Britannica, https://www. britannica.com/topic/Kaqchikel-language (last visited July 27, 2023). Over the course of approximately four pre-trial proceedings, including the detention hearing and a case conference, a Spanish interpreter provided interpretation services for defendant and the court. During a Miranda[1] hearing on January

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

4

28, 2020, defendant requested a Kaqchikel interpreter.[2]  Thereafter, the trial court retained a court-certified Kaqchikel interpreter.  The Kaqchikel interpreter only speaks Kaqchikel and Spanish, so another interpreter who speaks Spanish and English was also utilized to interpret from Spanish to English and vice versa.  The retained Kaqchikel interpreter resided on the West Coast of the United States, so he participated remotely in the pre-trial proceedings.

Given the relatively small number of people who speak Kaqchikel, court-certified interpreters for the language are not abundant.  The Kaqchikel interpreter in this matter indicated on the record that Kaqchikel interpreters are very scarce, that he works throughout the United States, and that his schedule was full for other matters two months out.

According to defendant's trial counsel, she was under the impression that the Kaqchikel interpreter would provide in-person interpretation services during the trial.  After learning that the trial court intended to provide only VRI services, defendant filed a motion for in-person interpretation services during trial.  The State did not submit any written opposition to the motion.

---

[2]  Although defendant did not request a Kaqchikel interpreter until the January 28, 2020 Miranda hearing, after using only a Spanish interpreter in previous proceedings, neither party has disputed defendant's lack of proficiency in Spanish or English in the appeal before this Court.

5

The motion hearing took place on January 24, 2023.  Jury selection was scheduled to begin on February 6, 2023.  Defendant was present and the Kaqchikel interpreter and the Spanish-English interpreters appeared virtually.  The State noted on the record that it "d[id] not take any position on the motion."  The proceeding was interrupted at least three times when the Spanish interpreter had to let a colleague take over, admitted to getting distracted, or was disconnected due to technical issues.  During the hearing, the Kaqchikel interpreter expressed his concerns about providing virtual interpretation services in a trial setting as follows:

> Your Honor, as I have said previously, that it is very complicated to do it in such a way to interpret at a distance.  It would be the first case for me to do it this way because for me it is complicated, not just because of the nature of the case, but the nature of the language.  And sometimes you don't hear very well and it is simply not the same.  And it is interpretation to be interpreted in this claim -- in this case to the client here.  So that is the additional challenge that it presents.  The complication that we have here would be the first case that I would -- that -- to work in such a fashion at the trial stage.

The trial court dismissed the Kaqchikel interpreter's concerns, stating "[u]nderstood.  Complications, though, can be overcome."  The trial court further advised the Kaqchikel interpreter that the court would give him "as much time as you need, understanding the complexities, not only of

6

interpretations, interpreting through two individuals, and also virtually. We'll

take as many breaks as you need, as you requested in the past." The trial court

reasoned that proceeding with VRI during the trial was "what's financially

feasible, what's fair, what's just." Additionally, the trial court articulated how

it would ensure a fair trial:

> [Defendant] has access to an [i]Pad, a pad of some sort, so that he could view the proceedings and the Interpreters as they speak. He has a set of headphones. Any time there's been an issue we've stopped proceedings to make adjustments . . . .
>
> . . . .
>
> As I said earlier, defendant has a right to a fair trial. Not every trial is perfect, nor can it be. And I deem it -- I deem that, at least through my experience in this case through the use of the Interpreters, as we have them set up through the use of IT, who is in this building and accessible at a moment's notice, defendant's rights are not infringed upon and shall not be infringed upon. And he shall have a fair trial.

After denying defendant's motion for in-person interpretation services, the

trial court denied defendant's request for a stay to make an application to the

assignment judge.

On January 25, 2023, defendant filed an application with the Appellate

Division requesting emergent relief. The Appellate Division granted the

application and defendant filed a motion for leave to appeal with that court. In

7

an order dated January 30, 2023, the Appellate Division denied defendant's motion for leave to appeal. Basing its decision on Directive #10-22, which grants trial courts the discretion to decide whether remote interpreting should be utilized, the Appellate Division concluded that the trial court did not abuse its discretion and left it to the trial court "to ensure the interpreters are provided with appropriate technology and the necessary time needed to ensure appropriate services are provided to defendant."

On January 30, 2023, defendant filed an emergent application with this Court, requesting relief from the Appellate Division's order. We granted defendant's application to file an emergent motion and his motion for a stay of the trial. Thereafter, we granted defendant's motion for leave to appeal. 253 N.J. 283 (2023). We also granted the applications of the Association of Criminal Defense Lawyers of New Jersey (ACDL), the National Association of Judiciary Interpreters and Translators and the American Translators Association (jointly, ATA), and LatinoJustice Puerto Rican Legal Defense and Education Fund (LatinoJustice) to appear as amici curiae.

## II.

### A.

Defendant argues that VRI is inferior to in-person interpretation, and that forcing him to use a remote interpreter violates his right to a fair trial and

8

equal access to the courts. Defendant emphasizes that the inevitable technical and logistical difficulties would directly prejudice him, since judges and jurors may "unconsciously misattribute" these technological frustrations to defendant. Defendant further claims that VRI would interfere with his understanding of the proceedings and ability to maintain eye contact with the jury and would prevent him from observing how the jury receives his testimony, which will deter defendant from exercising his constitutional right to testify.

Amici curiae all support defendant. The ACDL argues that the trial court's ruling risks depriving defendant of his right to an effective interpreter, which is associated with his other constitutional rights. The ACDL emphasizes that every challenge of remote interpreting would be magnified in the current case in which two interpreters would be involved.

LatinoJustice argues that adequate and competent interpretation, including the right to in-person interpretation, is inherent in the right to an interpreter. According to LatinoJustice, Kaqchikel is a complex language. LatinoJustice contends that denying defendant's in-person interpreting services request essentially denies equal access rights to the growing population of all Mayan-language speakers.

The ATA submits that VRI does not meet interpreters' professional standards, creates ethical risks for interpreters, and introduces unacceptable risks of errors into a criminal jury trial. The ATA contends that the nature of criminal trials, as well as the uniqueness of this case -- requiring a Spanish/English interpreter to work with a Spanish/Kaqchikel interpreter -- will lead to an exceptional level of cognitive overload and fatigue-related performance decline for the interpreter and urges this Court to accept the professional judgment of the Kaqchikel interpreter.

B.

The State argues that the trial court's order should be affirmed because the trial court correctly exercised the discretion afforded under Directive #10-22 to use remote interpreting. The State contends that using VRI will not interfere with defendant's ability to fully understand and appropriately participate in the trial. According to the State, any "technical glitches" will be addressed as needed by stopping proceedings to make necessary adjustments, and IT personnel are "accessible at a moment's notice" to correct any issues. The State acknowledges the Kaqchikel interpreter's expressed concerns about remote interpreting but asserts that he never told the court he was unwilling or unable to interpret remotely. The State further notes that defendant did not object to using VRI in pre-trial proceedings.

10

## III.

## A.

A trial judge has broad discretion in controlling the courtroom and court proceedings. State v. Pinkston, 233 N.J. 495, 511 (2018); State v. Jones, 232 N.J. 308, 311 (2018). "The decision as to whether an interpreter is required . . . will not be disturbed on appeal unless an abuse of discretion is manifest." State in Int. of R.R., 79 N.J. 97, 117 (1979); see also State v. Rodriguez, 294 N.J. Super. 129, 137-38 (Law Div. 1996) (noting that the decision to grant a non-English-speaking municipal court defendant an interpreter is subject to the "sound discretion" of the court).

The question of whether defendant was entitled to in-person as opposed to remote interpreting services pursuant to Directive #10-22, however, is a matter of first impression, and because there were no standards to guide the trial court's discretion, we review this matter de novo. See, e.g., New Jerseyans for Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 152 (2005) (reviewing a matter of first impression about an award of reasonable attorney's fees under the Open Public Records Act de novo because "the trial court was without standards to guide its discretion").

B.

1.

The Sixth Amendment and its counterpart in the New Jersey Constitution afford criminal defendants the right to a fair trial, the right of confrontation, and the right to counsel. U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10.

The Due Process Clause further protects a criminal defendant's right to a fair trial by guaranteeing the defendant's right to be present and to fully participate during trial. U.S. Const. amends. V, XIV; N.J. Const. art. I, ¶ 1. "The Due Process Clause also requires the States to afford certain civil litigants a 'meaningful opportunity to be heard' by removing obstacles to their full participation in judicial proceedings." Tennessee v. Lane, 541 U.S. 509, 523 (2004) ("[A] State must afford to all individuals a meaningful opportunity to be heard if it is to fulfill the promise of the Due Process Clause." (quoting Boddie v. Connecticut, 401 U.S. 371, 379 (1971))). Although we do not rest our decision on constitutional grounds, these principles provide important context for the discussion that follows.

2.

The spoken word is unquestionably the principal method of communication during in-court proceedings, so a participant's ability to understand and communicate through language is key to ensuring the fairness of the proceedings. A criminal defendant's right to an interpreter is widely recognized in both federal and New Jersey courts. See United States ex rel. Negron v. New York, 434 F.2d 386, 387-89 (2d Cir. 1970); United States v. Carrion, 488 F.2d 12, 14 (1st Cir. 1973); United States v. Gallegos-Torres, 841 F.2d 240, 242 (8th Cir. 1988); United States v. Lim, 794 F.2d 469, 470 (9th Cir. 1986); see also State v. Linares, 192 N.J. Super. 391, 393-94 (Law Div. 1983); State v. Kounelis, 258 N.J. Super. 420, 422, 425-27 (App. Div. 1992); Rodriguez, 294 N.J. Super. at 137, 142; State v. Guzman, 313 N.J. Super. 363, 379 (App. Div. 1998).

There are "three different but essential roles" interpreters play in criminal proceedings:

> (1) They make the questioning of a non-English-speaking witness possible; (2) they facilitate the non-English-speaking defendant's understanding of the colloquy between the attorneys, the witness, and the judge; and (3) they enable the non-English speaking defendant and his English-speaking attorney to communicate . . . .

13

[People v. Aguilar, 677 P.2d 1198, 1201 (Cal. 1984) (quoting Williamson B. C. Chang & Manuel U. Araujo, Interpreters for the Defense: Due Process for the Non-English-Speaking Defendant, 63 Cal. L. Rev. 801, 802 (1975)).]

Although the United States Supreme Court has never addressed whether there is a constitutional right to an interpreter, a criminal defendant in federal proceedings has a statutory right to such assistance. See 28 U.S.C. § 1827. Under the Court Interpreters Act of 1978, a "party (including a defendant in a criminal case), or a witness who may present testimony" "in judicial proceedings instituted by the United States" is entitled to the appointment of an interpreter if the district court determines that the party "speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer, or so as to inhibit such witness' comprehension of questions and the presentation of such testimony." 28 U.S.C. § 1827(d)(1).

The Second Circuit Court of Appeals recognized a criminal defendant's constitutional right to an interpreter decades ago in Negron, in which a Spanish-speaking defendant was convicted of murder after a jury trial. 434 F.2d at 387-88. During the trial, an interpreter employed on behalf of the prosecutor translated the court's instructions and summarized the testimony of

14

English-speaking witnesses for the defendant, but did not provide contemporaneous interpretation while the trial was in progress. <u>Id.</u> at 388.

The Second Circuit noted "that an indigent defendant who could speak and understand no English would have a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense." <u>Id.</u> at 389. The court determined that such a right derived from "fundamental fairness required by the due process clause of the Fourteenth Amendment" and "the Sixth Amendment's guarantee of a right to be confronted with adverse witnesses, . . . includ[ing] the right to cross-examine those witnesses as 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.'" <u>Ibid.</u> (quoting <u>Pointer v. Texas</u>, 380 U.S. 400, 405 (1965)). The court further concluded that the right to be present necessitates that every criminal defendant "possess 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" <u>Ibid.</u> (quoting <u>Dusky v. United States</u>, 362 U.S. 402, 402 (1962)).

Other federal circuits have also acknowledged a defendant's right to an interpreter. <u>See, e.g.</u>, <u>Carrion</u>, 488 F.2d at 14 ("The necessity for an interpreter . . . has been elevated to a right when the defendant is indigent and has obvious difficulty with the language."); <u>Gallegos-Torres</u>, 841 F.2d at 242

15

("A defendant who has difficulty with the language has a right to an interpreter."); <u>Lim</u>, 794 F.2d at 470 (noting that "[a] criminal defendant who relies principally upon a language other than English has a statutory right to a court-appointed interpreter" pursuant to 28 U.S.C. § 1827 and that "several circuits have held that a defendant whose fluency in English is so impaired that it interferes with his right to confrontation or his capacity, as a witness, to understand or respond to questions has a constitutional right to an interpreter").

New Jersey courts have also noted a criminal defendant's right to an interpreter and the constitutional underpinnings of that right. In <u>Linares</u>, the trial court expressly noted that "the constitutional right" of "a defendant in a criminal case . . . to the assistance of an interpreter so that he can understand the nature of the ongoing proceedings . . . has already been established." 192 N.J. Super. at 393. The court linked the right to an interpreter to a defendant's "right to counsel, the right to confront adverse witnesses, the right to cross-examine those witnesses, and the right to be present at one's own trial." <u>Id.</u> at 394 (quoting <u>In re Application of Murga</u>, 631 P.2d 735, 736 (Okla. 1981)).

In <u>Kounelis</u>, a Greek immigrant who did not speak English was convicted of robbery and weapons offenses after the trial court denied defense counsel's pre-trial request to have an interpreter sit next to and interpret for

16

defendant. 258 N.J. Super. at 422, 425-26. The Appellate Division held that "[t]he failure to afford defendant a Greek interpreter violated his rights under the confrontation and assistance of counsel provisions of our federal and state Constitutions." Id. at 426 (citing U.S. Const. amend. VI; N.J. Const. art. I, ¶ 10). The Appellate Division further declared it "self-evident . . . that a defendant who is unable to speak and understand English has a right to have his trial proceedings translated so as to permit him to participate effectively in his own defense." Id. at 427; see also Guzman, 313 N.J. Super. at 379 (establishing the general standard for adequate translation and its relationship to the right to a fair trial); Rodriguez, 294 N.J. Super. at 137, 142 (holding that, at the public expense, "a non-English-speaking municipal court defendant has the right to a court interpreter whenever that defendant is confronted with imprisonment or any other 'consequence of magnitude' upon conviction").

Other jurisdictions similarly recognize a criminal defendant's right to an interpreter. See, e.g., People v. Cunningham, 546 N.W.2d 715, 716 (Mich. Ct. App. 1996); Martinez Chavez v. State, 534 N.E.2d 731, 737 (Ind. 1989); State v. Thien Duc Le, 743 S.W.2d 199, 202 (Tenn. Crim. App. 1987); Suarez v. State, 481 So. 2d 1201, 1203 (Fla. 1985); State v. Neave, 344 N.W.2d 181, 184 (Wis. 1984), abrogated in other part by State v. Koch, 499 N.W.2d 152 (Wis. 1993).

17

C.

For decades, the New Jersey Judiciary has been committed to ensuring that all court users, including people with limited English proficiency, have equal access to all court proceedings. 2022 LAP, at app. 1 ("Historical Highlights"). The Language Services Section of the Administrative Office of the Courts (AOC) has "developed a comprehensive program through statutory authority, Court Rules, [and] Administrative Directives" to ensure language access for all members of the public who utilize our courts. Ibid. In 2017, the Judiciary implemented the LAP to "ensure all people, including persons with limited English proficiency . . . , have equal access to court proceedings." 2017 LAP (cover page mission statement); see also 2022 LAP (cover page mission statement reiterating substantially the same language). The LAP is grounded in the following three basic tenets:

> (1) anyone who is limited in their ability to speak and/or understand English or is deaf or hard of hearing is entitled to the same access to, and meaningful participation in, the court process and services as those who are not; (2) only qualified interpreters may interpret; and (3) all costs for interpreting are to be borne by the Judiciary, except in very limited instances.
>
> [Directive #01-17, at 1; accord Directive #10-22, at 1.]

This Court has consistently recognized the significance of access to interpreting services. See, e.g., Report of the Supreme Court Task Force on

18

the Improvement of Municipal Courts (June 28, 1985) ("The courts must be equally accessible to all persons regardless of their ability to communicate effectively in English."); Task Force on Drugs and the Courts Final Report (Apr. 1991) ("Defendants' rights to understand the proceedings against them are critical in the criminal justice process.  Improvements need to be made in the services provided defendants who do not speak English.  Interpreter and translation services should be routinely available in the courts . . . .").

"Remote interpreting (RI) is the provision of interpreting services using technology in a situation where the interpreter is at a location physically separate from court users of the interpreting service."  2022 LAP, at 31 (comments to Standard 1.8) (emphasis omitted).  Prior to the COVID-19 pandemic, court proceedings and services generally occurred and were available in-person within Judiciary facilities.  Pursuant to the 2017 LAP, the use of remote interpreting services was very limited -- only "for emergent matters when an on-site interpreter is not available or for short non-emergent matters of 30 minutes or less."  2017 LAP, at 20 (Standard 1.8) (emphases added).

The unprecedented circumstances of the COVID-19 pandemic resulted in the widespread use of virtual court proceedings.  In 2020, in light of ongoing remote court operations, this Court approved an addendum to the

19

2017 LAP which "applie[d] to interpreting services for remote court events during the COVID-19 crisis." Addendum to Directive #01-17 (June 19, 2020). The 2020 Addendum expanded Standard 1.8 of the 2017 LAP regarding the use of remote interpreting by permitting "remote interpreting services [to] be used for emergent or non-emergent matters even if longer than 30 minutes when an on-site interpreter is not available, including during an emergency that prevents the courts from operating in person." Id. at 2 (emphasis added). The Addendum also listed several factors for a court to consider in determining how to conduct a court event involving remote interpreting services:

> In determining how to conduct a court event using spoken or sign language remote interpreting services, the court shall make an informed decision considering the following factors:
>
> [1.] nature, length, and complexity of the court matter;
>
> [2.] language in which remote interpreting services is needed;
>
> [3.] virtual courtroom platforms (Zoom, Scopia, Teams, etc.);
>
> [4.] physical location of and technology available to the limited English proficient (LEP) and deaf or hard of hearing court users;

20

[5.] technology used by the interpreter(s), which varies even amongst staff interpreters;

[6.] moderator's management of the virtual courtroom, and

[7.] court user's position, if any.

. . . .

Remote interpreting (video or telephone) may not be appropriate for proceedings that are long (more than two hours) or complex or that involve constitutional rights, testimony, cross-examination, or production of evidence. If at any time before or during a remote proceeding, the court user is not satisfied with the quality and manner of the interpreting services, the court may determine to reschedule the proceeding. In using remote interpreting services, quality of interpretation will not be compromised.

[Ibid. (emphasis added).]

In September 2022, this Court revised the LAP via Directive #10-22. Directive #10-22 explicitly states that it "supersedes and replaces Directive #01-17," the 2017 LAP, and its 2020 Addendum. Directive #10-22, at 1. The 2022 revisions to the LAP modified various sections, including Standard 1.8, entitled "Use of Remote Interpreting." The purpose of the Standard 1.8 revision was "to formalize judicial discretion to authorize remote interpreting services for emergent and routine proceedings . . . consistent with current and

21

ongoing practices." Id. at 2. The revised Standard 1.8 in the 2022 LAP now

provides that

> [r]emote interpreting services are to be used for emergent or non-emergent matters for on-site, virtual or hybrid events, when appropriate. Judges shall have discretion to determine whether remote interpreting is to be used, in coordination with the vicinage interpreting unit and staff interpreters, to ensure the best remote interpreting option is provided when appropriate and to ensure efficient on-site, virtual, and hybrid court events; greater accessibility to AOC approved spoken and sign language court interpreters; and effective use of court interpreters and cost savings.
>
> [2022 LAP, at 31 (emphases added).]

In contrast to the 2017 LAP, the 2022 LAP expanded the use of remote

interpreting from "emergent matters" and "short non-emergent matters" to

"emergent or non-emergent matters." Also, for the first time, the 2022 LAP

authorized judges to exercise their discretion to use remote interpreting "when

appropriate."

The 2022 LAP Standard 1.8 revision also contains "Guidelines for Video

Remote Interpreting." 2022 LAP, at 32-33. Guideline 1 directs that courts

should "[r]outinely consider use of VRI options for on-site, virtual or hybrid

court events, with interpreters giving their expert opinions when needed." Id.

at 33 (emphasis added). Guideline 1 further notes that "[a]ppropriate use of

22

VRI ensures efficient court events; increased access to AOC approved interpreters; and effective use of court interpreters." Ibid.

In addition to the interpreting guidelines encompassed within the LAP, this Court adopted in 1994 the Code of Professional Conduct for Interpreters, Transliterators, and Translators (Code). See R. 1:14 (Appendix to Part I of the Court Rules). Standard 3.1.1 of the 2022 LAP states that "[a]ll persons employed by or under contract to the Judiciary who interpret, transliterate, or translate shall be bound by" the Code. 2022 LAP, at 46.

The Code consists of ten canons. Pursuant to Canon 2, an interpreter is to "faithfully and accurately reproduce in the target language the closest natural equivalent of the source-language message without embellishment, omission, or explanation." Canon 10, entitled "Impediments to Compliance with Code," states in part that "[w]hen an interpreter . . . has any reservation about his or her ability to satisfy an assignment competently, he or she should immediately convey that reservation to the court."

IV.

A.

Applying those principles to the newly revised LAP, we set forth guidelines and factors to assist trial courts in deciding whether VRI should be used during criminal jury trials. Consistent with New Jersey's jurisprudence

23

to ensure all court users have equal access to court proceedings, we hold that there should be a presumption of in-person interpreting services for criminal jury trials. We do not read the 2022 LAP to advance a contrary approach.

In considering whether to proceed to a jury trial with in-person or remote interpreting, trial courts, in exercising their discretion pursuant to the 2022 LAP, should take into consideration the following nonexclusive list of factors: (1) the nature, length, and complexity of the trial; (2) the number of parties and witnesses involved; (3) whether an interpreter is available to interpret in person at trial; (4) the impact any substantial delay in obtaining an in-person interpreter would have on the defendant and on third-parties such as co-defendants or victims; (5) whether the defendant tentatively plans to testify; (6) the financial costs associated with in-person interpreting as compared to remote interpreting; and (7) the interpreters' position as to whether they believe they can adequately fulfill their duties to interpret accurately and meet professional standards while interpreting virtually.

In the rare cases in which VRI is used for a criminal jury trial, guardrails should be put in place to ensure a fair trial for defendants, including built-in breaks for the interpreter to rest and for the defendant to consult with counsel. To ensure consistency in the use of remote interpreting throughout the state, a trial court's decision to use remote instead of in-person interpreting services at

24

a criminal jury trial should be approved by the Assignment Judge or Presiding Judge. To the extent that costs are a consideration, the vicinage should consult with the Administrative Office of the Courts for further guidance.

B.

Because we have, for the first time, articulated in this opinion guidance that trial courts should consider in determining whether to allow VRI during a criminal jury trial, we remand this matter to the trial court for reconsideration of whether VRI is appropriate.

In the present case, the Kaqchikel interpreter participated virtually in several pre-trial proceedings, as the State has argued. Pre-trial and trial proceedings, however, are significantly different. Pre-trial proceedings include arraignments, discovery hearings, plea negotiations, and pre-trial motion hearings and are governed by Rules 3:9 to :13. A criminal jury trial, by contrast, involves presenting evidence in various forms, questioning witnesses, and making legal arguments to the jury and judge, among other things, pursuant to Rules 3:14 to :19.

Even the most involved pre-trial hearing is far less logistically complex than a criminal jury trial because fewer parties are involved, it is easier to take breaks, and there are more opportunities for parties to consult counsel without causing an adjournment or delay in the proceedings. When an interpreter is

25

physically present in the courtroom during a trial, defense counsel is able to quickly and discreetly consult with clients through that interpreter while the proceedings are taking place. But when an interpreter participates virtually in a trial, the only way for confidential communication to occur between defendant and defense counsel would seemingly be to halt the proceedings and have the interpreter go to a virtual breakout room, which can be disruptive to the proceedings and hinder a criminal defendant's ability to have spontaneous and continuous communications with counsel.

Here, the Kaqchikel interpreter, in line with the Code, explicitly expressed his concerns about his ability to accurately provide interpretation services remotely during a jury trial, which would have been his first time doing so. The trial court noted on the record that in-person interpreting was not "financially feasible" but made no findings regarding the anticipated cost of in-person interpreting services compared to remote interpreting services. As we have articulated above, both the interpreter's position as to the possibility of adequately providing interpreting services remotely and the fiscal feasibility of in-person as compared to virtual interpreting services are factors for trial courts to consider in determining whether VRI is appropriate.[3]

---

[3] At oral argument, defense counsel proposed conducting jury selection virtually, which would streamline and reduce the costs of an in-person

It should be noted that no single factor is determinative and all factors should be considered in assessing the propriety of virtual interpretation during a criminal jury trial.

V.

For the foregoing reasons, we reverse the Appellate Division's judgment and remand for the trial court to reconsider the matter consistent with this opinion.  We urge the trial court to expedite the proceedings.

CHIEF JUSTICE RABNER; JUSTICES PATTERSON, SOLOMON, and WAINER APTER; and JUDGE SABATINO (temporarily assigned) join in JUSTICE PIERRE-LOUIS's opinion.  JUSTICE FASCIALE did not participate.

---

interpreter.  The parties can, of course, confer and agree to this procedure by stipulation.